391 S.E.2d 385

**Terry HALSTEAD and Theodore Morris**

**v.**

**George DIALS, Commissioner, West Virginia Department of Energy, and Appalachian Mining, Inc.**

**No. 19502.**

Supreme Court of Appeals of West Virginia.

March 23, 1990.

John McFerrin, Charleston, for Terry Halstead and Theodore Morris.

T. Randolph Cox, Spilman, Thomas, Battle & Klostermeyer, Charleston, for Appalachian Mining, Inc.

Roger W. Tompkins, Atty. Gen., Joseph A. Lazell, Asst. Atty. Gen., Charleston, for George Dials.

MILLER, Justice:

In this original mandamus proceeding, we are asked to determine what rights citizen intervenors, have under the West

Virginia Surface Coal Mining and Reclamation Act, W.Va.Code, 22A–3–1, *et seq.*, to participate in a consent settlement order.

## I.

By a letter dated September 18, 1989, George Dials, the Commissioner of the Department of Energy (DOE), instructed Appalachian Mining, Inc. (Appalachian), to show cause why its permits should not be suspended or revoked for certain surface mining violations. Appalachian held two surface mining permits along a tributary of Campbell's Creek in Kanawha County. By counsel, the petitioners, who live in the immediate vicinity of Appalachian's mining operations, made a motion to intervene in the proceedings on September 26, 1989. The motion was granted by the Commissioner on October 27, 1989, and the petitioners were advised that a show-cause hearing had been scheduled for January 11, 1990.

In early December, 1989, counsel for Appalachian contacted the Commissioner and counsel for petitioners and arranged for an informal conference on December 13, 1989, at the DOE office. At this conference, the parties discussed problems caused by Appalachian's operations, the alleged violations, and possible corrective measures. At that time, a DOE representative volunteered to prepare a draft of a consent decree and to circulate it to all the parties. The petitioners assert, without contradiction, that the parties had no further contact with each other on this matter until January 9, 1990, when a copy of the consent order, executed by the Commissioner and Appalachian and dated January 8, 1990, was sent to petitioners' counsel.

On January 12, 1990, the petitioners sought a writ of mandamus in this Court to compel the Commissioner to conduct a hearing to enable the petitioners to participate fully in the settlement before carrying out the consent order. The petitioners claim that the Commissioner's action in executing the decree was arbitrary and capricious because the decree was too lenient.

## II.

There are several areas of agreement among the parties. First, everyone accepts the proposition that under W.Va.Code, 22A–3–17(b), the petitioners are interested parties and have a statutory right to intervene.[1] A second point of apparent agreement is that this section also requires the show-cause hearing held by the Commissioner to comport with the Administrative Procedures Act, W.Va.Code, 29A–1–1, *et seq.*[2] Under W.Va.Code, 29A–5–1(a), the

---

**1.** W.Va.Code, 22A–3–17(b), provides, in part:

"If the commissioner determines that a pattern of violations of any requirement of this article or any permit condition exists or has existed, as a result of the operator's lack of reasonable care and diligence, or that the violations are willfully caused by the operator, the commissioner shall immediately issue an order directing the operator to show cause why the permit should not be suspended or revoked and giving the operator thirty days in which to request a public hearing. If a hearing is requested, the commissioner shall inform all *interested parties* of the time and place of the hearing. Any hearing under this section *shall be recorded and subject to the provisions of chapter twenty-nine-a* [§ 29A–1–1 et seq.] of this code." (Emphasis added). The term "interested parties" is not defined in the Surface Coal Mining and Reclamation Act. W.Va.Code, 22A–1A–1(d)(4) (1988), governing administration and enforcement of the mining laws, states that "[t]he term 'interested persons' includes the operator, members of any mine safety committee at the mine affected and other duly authorized representatives of the mine

workers and the department." It appears that the term "interested parties," as it is utilized in other sections of the Surface Coal Mining and Reclamation Act, is given a broader meaning. For example, W.Va.Code, 22A–3–20(b), relating to an initial application for a mining permit, enables "[a]ny *person having an interest which is or may be adversely affected* ... [to] have the right to file written objections to the proposed ... permit application." (Emphasis added). Similar language appears in other sections: W.Va.Code, 22A–3–21(b) (appeal of Commissioner's permit decision); W.Va.Code, 22A–3–22(b) (designation of area unsuitable for surface mining); W.Va.Code, 22A–3–23(f) (release of performance bond); W.Va.Code, 22A–3–25(a) (citizens' civil action). Similar language is also found in W.Va.Code, 22–4–2 and –3, relating to appeals to the Reclamation Board of Review and to the circuit court. These provisions demonstrate that interested parties may intervene under W.Va.Code, 22A–3–17(b).

**2.** In view of the apparent agreement that the Administrative Procedures Act applies to hear-

Commissioner has the power to enter a consent decree in a contested administrative case.[3]

What is at issue, then, is whether the petitioners, as intervenors, have a meaningful right to participate in the settlement. The Commissioner argues that they do not and that their remedy is to appeal any adverse decision to circuit court under W.Va.Code, 29A–5–4.[4]

The question of the status an intervenor has with regard to settlement of a contested administrative case is not frequently touched upon by courts. We can obtain some guidance from civil actions in which parties attempt to dispose of the case by settlement or consent order without the approval of persons who have intervened pursuant to the Rules of Civil Procedure. *See* Fed.R.Civ.P. 24; W.Va.R.Civ.P. 24.

There seems to be general agreement that once intervention has been granted, the original parties may not stipulate away, by a consent order or otherwise, the rights of the intervenors. The United States Supreme Court spoke to this point in *Local No. 93, Int'l Ass'n of Firefighters, AFL–CIO C.L.C. v. City of Cleveland,* 478 U.S. 501, 529, 106 S.Ct. 3063, 3079, 92 L.Ed.2d 405, 428 (1986): "Of course, parties who choose to resolve litigation through settlement may not dispose of the claims of a third party[.]" *See also Raylite Elec. Corp. v. Noma Elec. Corp.,* 170 F.2d 914 (2nd Cir.1948); *Harris v. Amoco Prod. Co.,* 768 F.2d 669 (5th Cir.1985), *cert. denied,* 475 U.S. 1011, 106 S.Ct. 1186, 89 L.Ed.2d 302 (1986); *Wheeler v. American Home Prods. Corp.,* 563 F.2d 1233 (5th Cir.1977); *Secretary of Labor v. Fitzsimmons,* 805 F.2d 682 (7th Cir.1986); *E.W. Foster Co., Inc. v. McLaughlin,* 7 Mass.App. 865, 385 N.E.2d 1031 (1979); 3B J. Moore, *Moore's Federal Practice* § 24.16[6] (2d ed. 1987).

As a corollary to this rule, it is generally held that courts may approve settlement of a case or enter a consent order even though the intervenors do not agree. Where the intervenors object to the terms of the settlement or decree, the court is required to make an independent assessment of the settlement on its merits. If the court determines that the settlement or decree is fair and the public interest is protected, the court may approve the agreement without the consent of the intervenors. *See, e.g., Citizens For A Better Env't v. Gorsuch,* 718 F.2d 1117 (D.C.Cir. 1983); *United States v. Seymour Recycling Corp.,* 554 F.Supp. 1334 (S.D.Ind. 1982); *United States v. Ketchikan Pulp Co.,* 430 F.Supp. 83 (D.Alaska 1977).

We believe these principles are equally applicable to the disposition of contested cases in administrative proceedings. The United States Supreme Court recognized as much in *Mobil Oil Corp. v. Federal Power Comm'n,* 417 U.S. 283, 94 S.Ct. 2328, 41 L.Ed.2d 72 (1974). The Federal Power Commission (FPC) had issued a rate order which was based, in part, on a settlement agreement reached by some, but not all, of the parties. The nonsettling parties attacked the order on the ground that unanimous agreement was required before the rate order could issue. The Supreme Court rejected this argument and quoted from the Fifth Circuit Court of Appeals' opinion in the same case:

" 'But even if there is a lack of unanimity, it may be adopted as a resolution *on the merits,* if FPC makes an independent finding supported by "substantial evidence on the record as a whole" that the proposal will establish "just and reasonable" rates for the area.' [*Placid Oil Co. v. Federal Power Comm'n*], 483 F.2d, [880] at 893 [ (5th Cir.1973) ]. (Em-

---

ings under W.Va.Code, 22A–3–17(b), we do not make any separate analysis of this point. It is not germane to the key issue we are called upon to decide.

**3.** W.Va.Code, 29A–5–1(a), provides, in relevant part: "Informal disposition may also be made of any contested case by stipulation, agreed settlement, consent order or default."

**4.** W.Va.Code, 29A–5–4, provides judicial review to "[a]ny party adversely affected by a final order ... in either the circuit court of Kanawha County ... or in the circuit court of the county in which the petitioner or any one of the petitioners resides or does business[.]" Again, we do not address the merits of this contention.

phasis in original.)" 417 U.S. at 314, 94 S.Ct. at 2348, 41 L.Ed.2d at 98.

*See also Federal Energy Regulatory Comm'n v. Triton Oil & Gas Corp.*, 712 F.2d 1450 (D.C.Cir.1983); *New Orleans Pub. Serv., Inc. v. Federal Energy Regulatory Comm'n*, 659 F.2d 509 (5th Cir.1981); 3 K. Davis, *Administrative Law Treatise* § 14:9 (1980).

■ We conclude, therefore, that once intervention has been granted in an administrative proceeding, the original parties may not stipulate away, by a consent order or otherwise, the rights of the intervenors. As a corollary to this rule, an administrative agency may approve settlement of a contested case or entry of a consent decree even though some of the parties, including intervenors, do not concur in the agreement. Where there are objections to the settlement or decree, the agency is required to make an independent assessment of the agreement on its merits. If the agency determines that the agreement is just and reasonable, with due consideration given to the public interest and to applicable legislative dictates, it may confirm the settlement or enter the consent order without the authorization of the dissenting parties.

■ In the present case, the intervenors were never consulted about the terms of the settlement agreement. Nor were they permitted to object to the agreement or to have the Commissioner make a reasoned determination of its merits. The petitioners had a right to have their objections heard, and the Commissioner had a duty to give them a hearing.

### III.

■ Finally, we address the contention that mandamus is an inappropriate remedy. There are three traditional elements that must be found to exist to obtain a writ of mandamus, as we set out in Syllabus Point 2 of *State ex rel. Kucera v. City of Wheeling*, 153 W.Va. 538, 170 S.E.2d 367 (1969):

"A writ of mandamus will not issue unless three elements coexist—(1) a clear legal right in the petitioner to the relief sought; (2) a legal duty on the part of respondent to do the thing which the petitioner seeks to compel; and (3) the absence of another adequate remedy."

*See Trumka v. Moore*, 180 W.Va. 284, 376 S.E.2d 178 (1988); *West Virginia Citizens Action Group, Inc. v. Daley*, 174 W.Va. 299, 324 S.E.2d 713 (1984); *McMellon v. Adkins*, 171 W.Va. 475, 300 S.E.2d 116 (1983). In *Smith v. West Virginia State Bd. of Educ.*, 170 W.Va. 593, 596, 295 S.E.2d 680, 683 (1982), we discussed these requirements at some length and explained that "[w]e have in the past permitted the writ of mandamus to be brought against public officials who have some positive duty to act and who fail to do so." (Citations omitted).

In the present case, the petitioners' standing as intervenors is conceded, and we have recognized their legal right to have meaningful input into the settlement process. Concomitantly, there is a duty on the part of the Commissioner, as the designated hearing officer under W.Va.Code, 22A-3-17(b), to hold such a hearing.

■ The only remaining element is the absence of another adequate remedy. We addressed this component in Syllabus Point 2 of *Stowers v. Blackburn*, 141 W.Va. 328, 90 S.E.2d 277 (1955):

"Mandamus will not be denied because there is another remedy, unless such other remedy is equally beneficial, convenient and effective."

*See also Smith v. West Virginia Bd. of Educ., supra.*

If the petitioners here are required to appeal the Commissioner's refusal to let them participate in the settlement, the resolution of this matter will take months. In the meantime, the settlement process will have concluded, and the petitioners' rights will be nugatory. An appeal will not, in the words of *Stowers*, be as "equally beneficial, convenient and effective" as the writ of mandamus.

For the foregoing reasons, we direct a writ of mandamus to issue directing the Commissioner to provide the petitioners

with a hearing to present their views and objections to the settlement agreement. The settlement agreement is not to be deemed final until such hearing is held and until the Commissioner renders an appropriate order, after considering whether the settlement is in accord with the public interest and with the legislative dictates contained in the West Virginia Surface Coal Mining and Reclamation Act, W.Va.Code, 22A–3–1, *et seq.*

Writ awarded.