# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**Bobbie Jo R., Intervenor Below,**
**and Myles R., by his next friend**
**and biological mother, Jennifer P.,**
**Petitioner Below, Petitioners**

**FILED**

June 7, 2013
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs)  No. 11-1753** (Wood County 11-D-611)

**Traci W.,**
**Respondent Below, Respondent**

## MEMORANDUM DECISION

Petitioners, by counsel James Wilson Douglas, appeal the orders of the Circuit Court of Wood County, both entered on November 23, 2011, that affirmed the single order of the Family Court, entered on August 23, 2011. Respondent appears by counsel Jason G. Heinrich and Bruce Perrone. Amici curiae West Virginia Psychological Association, The American Civil Liberties Union of West Virginia Foundation, and Fairness West Virginia filed a brief in support of petitioners, by counsel Stephen G. Skinner, Elizabeth L. Littrell, and Gregory R. Nevins.

This Court has considered all briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

Petitioner Myles R.[1], now nearly two years old, filed by his biological mother Jennifer P. on July 20, 2011, in the Family Court of Wood County, a petition asserting the right to sibling visitation with Maddox R., now five years old.  Petitioner mother stated that Myles and Maddox were conceived through the artificial insemination of different biological mothers, using the sperm of the same anonymous donor, which was acquired from a commercial service.[2] Respondent Traci W. is the biological mother of Maddox.

---

[1]"As in all sensitive matters involving the rights of children, we use only initials in reference to the last names of the individuals involved." *Visitation of Cathy L.(R.)M. v. Mark Brent R.*, 217 W.Va. 319, 321 n.1, 617 S.E.2d 866, 868 n.1 (2005).

[2]According to one pleading, at least 18 children have been conceived from this donor's sperm.

1

Also on July 20, 2011, Petitioner Bobbie Jo R. filed a motion to intervene together with a document styled "Petition for Allocation of Custodial Responsibility and Decision Making[,]" asserting that she is the psychological parent of Maddox, having lived with Respondent Traci W. from at least Maddox's birth until November 21, 2010. She characterizes the relationship between her and respondent as having "produced" Maddox. Petitioner Bobbie Jo R. acknowledges that she initiated a prior proceeding related to the custody of Maddox in the Family Court of Wood County by filing a document styled "Petition for Custodial Responsibility[.]"[3] That action was dismissed on December 10, 2010, on the ground that petitioner lacked standing and was not a proper party for custodial allocation. The Circuit Court of Wood County affirmed the dismissal by order entered on February 25, 2011, and petitioner did not appeal the circuit court order.

The Family Court of Wood County denied the motion to intervene and dismissed the petitions that are the subject of this action by order entered on August 23, 2011. The family court judge found that Myles and Maddox had never met, had never had a familial relationship, were not siblings, and had no basis for sibling visitation. The judge determined that the best interest of the child would not be served by granting the relief requested. Petitioner on behalf of Myles, and Petitioner Bobbie Jo R. each filed a petition for appeal in the Circuit Court of Wood County. The circuit court entered two orders on November 23, 2011. The first affirmed the family court's order denying Petitioner Bobbie Jo R.'s motion to intervene, and the second affirmed the family court's order dismissing the petition. Each order concluded that the family court's findings of fact were not clearly erroneous and the family court judge did not abuse his discretion.

Both petitioners assert on appeal that: (1) the lower courts did not include specific citations of law in their orders; (2) they were denied equal protection and due process; (3) the order granting dismissal was tantamount to one granting summary judgment in the face of "extensive" questions of material fact and "unargued" questions of law; and (4) the lower courts erred in not permitting this case to go forward on the merits, though it was admitted for purposes of the motion to dismiss that Myles and Maddox are biological half-siblings. Petitioner Bobbie Jo R. also asserts that the lower courts erred in not evaluating her motion to intervene independently of the petition that was filed on behalf of Myles.

We first consider whether the circuit court erred in affirming the family court's dismissal of the petition for sibling visitation. Petitioner Jennifer P. grounded her petition in West Virginia Code § 48-9-103, a statute that is silent as to the role of siblings in domestic relations cases. Because we have unambiguously held that "the jurisdiction of family courts is limited to only

---

[3]In that one-and-a-half page pleading, Petitioner Bobbie Jo R. did not explain in detail her relationship to Maddox or Respondent Traci W, but wrote only that she and Traci "had one child in Wood County[,]" Maddox. She then asked that the family court "allow parenting time and shared custody, including shared decision making, as he (*sic*) is a fit and proper person to do such." At the outset of that pleading, petitioner stated that she appeared by "his/her attorney[.]" That pleading, in effect, if not intentionally, was misleading as to petitioner's gender and the basis for her claims. It failed to convey any claim that petitioner was entitled to psychological parent status, but instead implied that she was the biological father of Maddox.

2

those matters specifically authorized by the Legislature . . . [and] circuit courts have jurisdiction of sibling visitation. . . [,]" we observe that the family court never had jurisdiction to consider the petition filed by Petitioner Jennifer P. on behalf of Myles. Syl. Pt. 5, *Lindsie D.L. v. Richard W.S.,* 214 W.Va. 750, 591 S.E.2d 308 (2003).

> To this juncture, the authority of the family court has not been challenged; however,

> "[l]ack of jurisdiction of the subject matter may be raised in any appropriate manner . . . and at any time during the pendency of the suit or action." *McKinley v. Queen*, 125 W.Va. 619, 625, 25 S.E.2d 763, 766 (1943) (citation omitted). As to the appropriate manner by which the lack of subject matter jurisdiction is raised, we have said that "[l]ack of jurisdiction may be raised for the first time in this court, when it appears on the face of the bill and proceedings, and it may be taken notice of by this court on its own motion." Syl. Pt. 3, *Charleston Apartments Corp. v. Appalachian Elec. Power Co.,* 118 W.Va. 694, 192 S.E. 294 (1937); see also Syl. Pt. 2, *In re Boggs' Estate*, 135 W.Va. 288, 63 S.E.2d 497 (1951) ("This Court, on its own motion, will take notice of lack of jurisdiction at any time or at any stage of the litigation pending therein."); Syl. Pt. 1, *Dawson v. Dawson*, 123 W.Va. 380, 15 S.E.2d 156 (1941). The urgency of addressing problems regarding subject-matter jurisdiction cannot be understated because any decree made by a court lacking jurisdiction is void. Syl. Pt. 5, *State ex rel. Hammond v. Worrell*, 144 W.Va. 83, 106 S.E.2d 521 (1958), rev'd on other grounds, *Patterson v. Patterson*, 167 W.Va. 1, 277 S.E.2d 709 (1981).

*State ex rel. TermNet Merchant Services, Inc. v. Jordan*, 217 W.Va. 696, 700, 619 S.E.2d 209, 213 (2005). The family court was without jurisdiction, and there is no error in the dismissal of this action, though the circuit affirmed the dismissal on the merits.[4] Our cases are clear in

---

[4]While we do not pass on the merits of the case before us, it is noteworthy that Maddox and Myles never lived together, and likely never met. Our jurisprudence on matters of sibling visitation emphasizes the continuation of established, beneficial relationships. We recognized in syllabus point 2 of *Honaker v. Burnside*, 182 W.Va. 448, 388 S.E.2d 322 (1989) that a "child *may* have a right to continued visitation rights with the . . . half-sibling." (Emphasis added.) That right is not absolute, however; it must be considered in light of the parents' "liberty interest . . . in the care, custody, and control of their children. . . ." *Lindsie D.L.* at 754, 591 S.E.2d at 312. Above all,

> [the child's] best interests must be the primary standard by which we determine [his] rights to *continued* contact with other significant figures in [his] life. . . . "It is the benefit of the child that is vital." "Visitation is . . . aimed at fulfilling what many conceive to be a vital, or at least a wholesome contribution to the child's emotional well being by *permitting partial continuation of an earlier established close relationship*." *Looper v. McManus*, 581 P.2d 487, 488 (Okla. Ct. App. 1978) . . . .

holding that we may affirm on grounds different than that relied upon by the trial court. See *Schmehl v. Helton*, 222 W.Va. 98, 106 n. 7, 662 S.E.2d 697, 705, n. 7 (2008) ( "[T]his Court may in any event affirm the circuit court on any proper basis, whether relied upon by the circuit court or not."); *Murphy v. Smallridge*, 196 W.Va. 35, 36–37, 468 S.E.2d 167, 168–69 (1996) ("An appellate court is not limited to the legal grounds relied upon by the circuit court, but it may affirm or reverse a decision on any independently sufficient ground that has adequate support.").

We turn to Petitioner Bobbie Jo R.'s assertion that her motion to intervene was not dependent on the petition filed on behalf of Myles. Petitioner appears to argue that her position is a natural extension of our holding in Syl. Pt. 1, *Halstead v. Dials*, 182 W.Va. 695, 391 S.E.2d 385 (1990) ("Once intervention has been granted in an administrative proceeding, the original parties may not stipulate away, by a consent order or otherwise, the rights of the intervenors.") She urges that "once intervention is granted in a civil action . . . the intervenor's claim . . . does not necessarily stand or fall on the initial plaintiff's complaint." Even if this premise saved a claim introduced through intervention in an invalid action, as this one is, petitioner attempts to bypass an essential hurdle: Intervention was not granted. Nor can we say that the denial of the motion to intervene was in error.

Rule 24 of the West Virginia Rules of Civil Procedure provides, in part:

Intervention. (a) Intervention of right. Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute of this State confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may be as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties. (b) Permissive intervention. Upon timely application anyone may be permitted to intervene in an action: (1) when a statute of this State confers a conditional right to intervene; or (2) when an applicant's claim or defense and the main action have a question of law or fact in common. When a party to an action relies for ground of claim or defense upon any statute or executive order administered by a federal or State governmental officer or agency or upon any regulation, order, requirement, or agreement issued or made pursuant to the statute or executive order, the officer or agency upon timely application may be permitted to intervene in the action. In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

Petitioner Bobbie Jo R. has demonstrated no established legal relationship to either Myles or Maddox. Though she petitioned the family court for custodial rights to Maddox in 2010, her

---

*Id.* at 753, 591 S.E.2d at 311 (emphasis added). We have noted that, in promoting stability in a child's life, "termination of visitation *with individuals to whom the child was close* would contribute to instability rather than provide stability." *Honaker* at 452, 388 S.E.2d at 326 (internal quotation marks and footnotes omitted)(emphasis added).

petition was denied, and she did not appeal the circuit court's order affirming that denial to this Court. No statute confers on her a right—either unconditional or conditional—to intervene, and we perceive no claim that Petitioner Bobbie Jo R. may have had in common with the main action, which would have been limited to the determination of Myles' right to visitation with Maddox, and nothing more. Petitioner has no independent, surviving claim.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** June 7, 2013

**CONCURRED IN BY:**

Chief Justice Brent D. Benjamin
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II