405 S.E.2d 640

**Giles KEATON, Plaintiff Below, Appellant,**

v.

**WCC AND ROCKINGHAM MARKETING COOPERATIVE I and Itmann Coal Company, Defendant Below, Appellee.**

No. 20021.

Supreme Court of Appeals of West Virginia.

Submitted April 30, 1991.

Decided May 24, 1991.

Don M. Stacy, Beckley, for appellant.

Robert J. Busse, Jackson & Kelly, Charleston, for appellee.

NEELY, Justice:

The question presented in this case is whether an award payable from the second injury reserve fund is to be computed based on the claimant's earnings at the time of the "second injury" or based on his earnings at the time of an earlier compensable injury, when his earnings were higher.

Claimant, Giles Keaton, appeals a decision of the Workers' Compensation Appeal Board entered 2 November 1990, affirming the Commissioner's 16 March 1989 Order granting him a permanent partial disability award payable at a benefit rate based on claimant's weekly wage earnings on the date of his last injury, 8 January 1980. On appeal, Mr. Keaton contends that he should be paid benefits at the highest rate justified by any of his previous compensable injuries.

Mr. Keaton, now 34 years old, began work at age 17, as a short order cook. He went on to work in several positions that required substantial lifting of heavy objects. Claimant received his first back injury on 1 December 1975, while unloading air conditioners for Lowe Brothers Electric Company. He went on to injure his back on 22 March 1977 and 28 October 1977, while working for Itmann Coal Company.

The 28 October 1977 injury resulted in a herniated disc that required surgical excision. For this injury, claimant was granted a 15 percent orthopedic permanent partial disability award.

After undergoing back surgery, claimant attempted to work again in the coal industry, but he was unable to work. In April 1979, claimant went to work for Rockingham Poultry Marketing Cooperative I as a line foreman. He worked at Rockingham until 8 January 1980, when he sustained another back injury, requiring the surgical removal of a herniated disk. As a result of claimant's compensable back injury, he developed a psychiatric disorder for which he has undergone treatment. By order dated 16 March 1989, the Commissioner granted Mr. Keaton a 20 percent orthopedic permanent partial disability and an additional 20 percent psychiatric permanent partial disability for the 8 January 1980 injury. Because the aggregate effect of Mr. Keaton's 8 January 1980 back injury and his prior compensable injuries made him permanently and totally disabled, the Commissioner also granted Mr. Keaton a permanent total disability award with benefits to be paid in the amount of $519.30 per month, based on Mr. Keaton's wages at the time of the last injury, 8 January 1980.

Mr. Keaton agrees that Rockingham's charge for benefits directly attributable to the 8 January 1980 injury were correctly computed based on his wages as of that injury. Thus, he agrees that the 208 weeks of temporary total disability benefits and the 40 percent permanent partial disability award granted for the 8 January 1980 injury were correctly computed using his wages as of 8 January 1980. However, Mr. Keaton contends that the part of his permanent partial disability award that is to be paid from the second injury reserve fund should be paid based on his higher wages at the time of an earlier compensable injury.

■ The workers' compensation statute clearly directs how benefits are to be calculated, and, based on its provisions, we must affirm the decision of the Workers' Compensation Appeal Board. *W. Va. Code*, 23–4–14 [1976] tells us exactly how to compute benefits. In particular, paragraph 1 states:

The average weekly wage earnings, wherever earned, of the injured person at the date of injury, and the average weekly wage in West Virginia as determined by the commissioner of employment security, in effect at the date of injury, shall be taken as the basis upon which to compute the benefits.

*W. Va. Code*, 23–4–6(a) [1986] explicitly provides that:

The expressions "average weekly wage earnings, wherever earned, of the injured employee, at the date of injury" and "average weekly wage in West Virginia," as used in this chapter, shall have the meaning and shall be computed as set forth in section fourteen [§ 23–4–14] of this article.

Further, an element of generosity is built into the definition of "average weekly wage earnings," for paragraph 4 of *W. Va. Code*, 23–4–14 [1986] provides:

The expression "average weekly wage earnings, wherever earned, of the injured person, at the date of injury," within the meaning of this chapter, shall be computed based upon the daily rate of pay at the time of the injury or upon the average pay received during the two months, six months or twelve months immediately preceding the date of the injury, whichever is most favorable to the injured employee.

■ Thus, if a claimant's average weekly wage over the last year before the injury is higher than his average weekly wage at the time of the injury, the higher figure would be used. Unfortunately, Mr. Keaton's highest earnings occurred more than a year before the last injury, so *W. Va. Code*, 23–4–14 [1986] will not help him.

■ When the legislature said "date of the injury", it could only have been referring to the date of the injury that made the claimant eligible for the particular award. It is clear that it is the last injury, on 8 January 1980, that made Mr. Keaton eligible for permanent total disability. The legislature could have set out the rule that Mr. Keaton proposes, but it did not. Any alternative "date of injury" provision would need to have been specifically set out in the statute.

Because we are bound to follow the statute, and the statute is clear, we must affirm the decision of the Workers' Compensation Appeal Board, and hold that Mr. Keaton's entire permanent total disability award be computed based on his average weekly wage earnings at the date of his last injury.

For the reasons given above, the decision of the Workers' Compensation Appeal Board is affirmed.

Affirmed.