514 S.E.2d 176

STATE of West Virginia ex rel. ACF IN-
DUSTRIES, INC.; Wheeling–Pittsburgh
Steel Corporation; Elkay Mining Com-
pany; and Consolidation Coal Company,
Petitioners,

v.

William F. VIEWEG, Commissioner,
Workers' Compensation Division, Bu-
reau of Employment Programs; Danny
J. Stover; and Melanie McGhee, Respon-
dents.

No. 25142.

Supreme Court of Appeals of
West Virginia.

Submitted Sept. 8, 1998.

Decided Feb. 5, 1999.

John L. McClaugherty, Timothy E. Huffman, Jackson & Kelly, Charleston, West Virginia, Attorneys for the Petitioners.

Darrell V. McGraw, Jr., Attorney General, Garrett L. Jacobs, Assistant Attorney General, Donald L. Hall, Senior Counsel, Workers' Compensation Division, Bureau of Employment Programs, Charleston, West Virginia, Attorneys for Respondent Commissioner Vieweg.

Don M. Stacy, Beckley, West Virginia, Attorney for Respondent Stover.

Sue Anne Howard, Wheeling, West Virginia, Attorney for Respondent McGhee.

Sarah E. Smith, Phyllis M. Potterfield, Tracy L. Webb, Bowles Rice McDavid Graff & Love, PLLC, Charleston, West Virginia, Attorney for Amicus Curiae, West Virginia Manufacturers Association.

W. Stuart Calwell, Jr., Calwell & McCormick, Charleston, West Virginia, Attorney for Amici Curiae, Affiliated Construction Trades Foundation and West Virginia Building and Construction Trades Council, AFL–CIO.

Thomas P. Maroney, Thomas P. Maroney, L.C., Charleston, West Virginia, Attorney for Amicus Curiae, West Virginia AFL–CIO.

Henry C. Bowen, Spilman Thomas & Battle, PLLC, Charleston, West Virginia, Attorney for Amicus Curiae, West Virginia Self–Insurers Association.

DAVIS, Justice:

In this original jurisdiction proceeding, the petitioners herein, ACF Industries, Inc., Wheeling–Pittsburgh Steel Corporation, Elkay Mining Company, and Consolidation Coal Company [hereinafter "the petitioners" or "the petitioning employers"], seek a writ of mandamus to compel the respondent herein, William F. Vieweg, Commissioner of the Workers' Compensation Division of the Bureau of Employment Programs [hereinafter "the Commissioner"], to apply the 1995 amendments to the West Virginia workers' compensation statutes to various workers' compensation claims filed by their employees who were injured in the course of and as a result of their employment before the pertinent statutory amendments became effective. Specifically, the petitioning employers request this Court to require the Commissioner to apply those statutory amendments which govern the eligibility criteria for and benefit amounts of permanent total disability [hereinafter "PTD"] awards, described in W. Va. Code § 23–4–6(b, d, n(1)) (1995) (Repl.Vol. 1998), to their employees' claims for PTD benefits that were filed after the amendments' effective date. Based upon the applicable authorities and the deference we accord a governmental officer's interpretations of the laws he/she is charged with administering, we conclude that mandamus relief is not appropriate in this instance. Accordingly, we deny the writ of mandamus.

## I.

## FACTUAL AND PROCEDURAL HISTORY

The salient facts of this case have their origins in the amendments to the West Virginia workers' compensation statutes introduced and enacted by the Legislature of this State in 1995. To better understand the impact of these legislative alterations in the law, however, it is first necessary to understand the context within which such amendments arose. Prior to 1995, an employee injured in the course of and as a result of his/her employment who was rendered permanently and totally disabled by his/her occupational injury, occupational disease, or a combination thereof could obtain a PTD award by demonstrating that he/she had "[a] disability which renders the injured employee unable to engage in substantial gainful activity requiring skills or abilities comparable to those of any gainful activity in which he or she has previously engaged with some regularity and over a substantial period of time ...." W. Va.Code § 23–4–6(n) (1994) (Repl.Vol.1994).[1] *See also* W. Va.Code § 23–

---

1. In determining whether an injured employee was permanently and totally disabled, the statutory guidelines also considered certain vocational standards set forth in W. Va.Code § 21A–3–7(m) (1993) (Repl.Vol.1996). Moreover, W. Va.Code § 23–4–6 (1994) (Repl.Vol.1994) presumed cer-

4-6(n) (1993) (Cum.Supp.1993) (same); W. Va.Code § 23-4-6(n) (1990) (Cum.Supp.1991) (same); W. Va.Code § 23-4-6(n) (1986) (Cum.Supp.1990) (same); W. Va.Code § 23-4-6(n) (1978) (Repl.Vol.1985) (same). Upon being granted a PTD award, the employee received workers' compensation disability benefits "during the remainder of [his/her] life," W. Va.Code § 23-4-6(d) (1994) (Repl. Vol.1994), "computed on the basis of seventy percent of the average weekly wage earnings, wherever earned, of the injured employee, at the date of injury, not to exceed the [stated] percentage of the average weekly wage in West Virginia," W. Va.Code § 23-4-6(b) (1994) (Repl.Vol.1994). *See also* W. Va.Code § 23-4-6(b, d) (1993) (Cum.Supp. 1993) (same); W. Va.Code § 23-4-6(b, d) (1990) (Cum.Supp.1991) (same); W. Va.Code § 23-4-6(b, d) (1986) (Cum.Supp.1990)

(same); W. Va.Code § 23-4-6(b, d) (1978) (Repl.Vol.1985) (same).

On February 10, 1995, the West Virginia Legislature passed and enacted Committee Substitute for Senate Bill 250, which comprehensively revised numerous aspects of West Virginia workers' compensation law.[2] The purported goal of these sweeping reforms envisioned ameliorating the workers' compensation fund's fiscal crisis and restoring its financial integrity. *See State ex rel. Blankenship v. Richardson,* 196 W.Va. 726, 729-31, 474 S.E.2d 906, 909-11 (1996). Among the changes effectuated by the 1995 legislation were substantial revisions to the criteria for determining a disabled employee's eligibility for PTD benefits and the method for calculating the monetary amount of such an award.[3] Specifically, the 1995 amendments

---

tain individuals to be permanently and totally disabled if their prior awards of permanent partial disability equaled or exceeded eighty-five percent or if they sustained injuries resulting in the loss of use of specific bodily parts. *See* W. Va. Code § 23-4-6(d) (1994) (Repl.Vol.1994) ("A permanent disability of eighty-five percent or more shall entitle the employee to a rebuttable presumption of a permanent total disability for the purpose of this section."); W. Va.Code § 23-4-6(m) (1994) (Repl.Vol.1994) (noting that certain "permanent disabilities shall be conclusively presumed to be total in character," including "[l]oss of both eyes or the sight thereof[, l]oss of both hands or the use thereof[, and l]oss of both feet or the use thereof"). *See also* W. Va.Code § 23-4-6(d, m) (1993) (Cum.Supp.1993) (same); W. Va.Code § 23-4-6(d, m) (1990) (Cum.Supp. 1991) (same); W. Va.Code § 23-4-6(d, m) (1986) (Cum.Supp.1990) (same); W. Va.Code § 23-4-6(d, m) (1978) (Repl.Vol.1985) (same).

2. Also on February 10, 1995, the West Virginia Legislature voted to override the usual ninety days from passage effective date for newly enacted legislation and to make the workers' compensation statutory amendments effective from date of passage, February 10, 1995. *See* I Journal of House of Delegates of West Virginia, Seventy-second Legislature, Regular Session 404-05 (1995). *See also* W. Va. Const. art. VI, § 30 ("[N]o act of the legislature ... shall take effect until the expiration of ninety days after its passage, unless the legislature shall by a vote of two thirds of the members elected to each house, taken by yeas and nays, otherwise direct."); *Perry v. Barker,* 169 W.Va. 531, 533 n. 1, 289 S.E.2d 423, 425 n. 1 (1982) ("The purpose of this ninety day period between passage and date of effect is to provide a sufficient period of time to give notice to the public of the contents of the new

law, and to provide government officials sufficient time to perform the duties contemplated by the law. Once the ninety day period has expired the law becomes effective and from that moment the executive department has the duty to attend to its faithful execution. W. Va. Const. art. 7, § 5."). Despite the Legislature's attempt to make these amendments effective from their date of passage, this Court, in *State ex rel. Blankenship v. Richardson,* found such action to be violative of the affected claimant's due process rights to notice and rendered these amendments effective ninety days from passage, *i.e.,* May 12, 1995. 196 W.Va. 726, 738-39, 474 S.E.2d 906, 918-19 (1996). For further treatment of the *Blankenship* decision, see *infra* Section III.

3. For additional changes affecting the award and receipt of PTD benefits, *see, e.g.,* W. Va.Code § 23-4-16(d) (1995) (Repl.Vol.1998) (permitting continuous monitoring of claimants receiving PTD awards) and W. Va.Code § 23-4-16(c) (1993) (Repl.Vol.1994) (same); W. Va.Code § 23-4-24 (1995) (Repl.Vol.1998) (instituting new eligibility criteria for award of PTD benefits and denying such an award to claimant who is receiving federal old age Social Security benefits) and W. Va.Code § 23-4-24 (1993) (Repl.Vol. 1994) (same). *Cf.* W. Va.Code § 23-4-16 (1983) (Repl.Vol.1985) (not specifically calling for continued monitoring of recipients of PTD benefits) and W. Va.Code § 23-4-16 (1978) (Cum.Supp. 1980) (same). In addition to revising the eligibility criteria for and award amounts of PTD benefits, and implementing other related changes, the 1995 amendments altered other aspects of the workers' compensation system. *See, e.g.,* W. Va. Code § 23-3-5 (1995) (Repl.Vol.1998) (instituting procedure whereby Workers' Compensation Division is authorized to disburse funds electronically); W. Va.Code § 23-4-1d (1995) (Repl.Vol.

created a distinct minimum threshold level of medical impairment required to be present before an employee could request an award of PTD benefits.

Other than for those injuries specified in subdivision (m) of this section, *in order to be eligible to apply for an award of permanent total disability benefits for all injuries incurred and all diseases,* including occupational pneumoconiosis, with a date of last exposure on and after the second day of February, one thousand nine hundred ninety-five, and for all requests for such an award pending before the division on and after the second day of February, one thousand nine hundred ninety-five, *a claimant must have been awarded the sum of fifty percent in prior permanent partial disability awards or have suffered an occupational injury or disease which results in a finding that the claimant has suffered a medical impairment of fifty percent. Upon filing such an application, the claim will be reevaluated by the examining board pursuant to subdivision (j) of this section to determine if he or she has suffered a whole body medical impairment of fifty percent or more resulting from either a single occupational injury or occupational disease or a combination of occupational injuries and occupational diseases* .... If the claimant has not suffered whole body medical impairment of at least fifty percent, then the request shall be denied. *Upon a finding that the claimant does have a fifty percent whole body medical impairment, then the review of the application shall continue as provided for in*

*the following paragraph of this subdivision* .... For the purposes of determining whether the claimant should be awarded permanent total disability benefits under the second injury provisions of subsection (d), section one [§ 23–3–1d [sic]], article three of this chapter, only a combination of occupational injuries and occupational diseases, including occupational pneumoconiosis, shall be considered.

W. Va.Code § 23–4–6(n)(1) (1995) (Repl.Vol. 1998) (emphasis added).[4] *Cf.* W. Va.Code § 23–4–6(n) (1994) (Repl.Vol.1994). In addition to establishing a much more detailed and medically exact method by which to determine an injured employee's eligibility to be considered for a PTD award, the 1995 amendments relegated the prior standard for PTD determination to but one consideration among divers criteria. *See* W. Va.Code § 23–4–6(n)(2) (1995) (Repl.Vol.1998) ("A disability which renders the injured employee unable to engage in substantial gainful activity requiring skills or abilities comparable to those of any gainful activity in which he or she has previously engaged with some regularity and over a substantial period of time *shall be considered in determining the issue of total disability.*" (emphasis added)).

In addition to establishing a distinct threshold for the application and receipt of PTD benefits, the 1995 amendments also altered the amount of compensation to be paid to a claimant who had been granted an award of PTD benefits. Contrary to the previous standard awarding a permanently and totally disabled individual lifetime bene-

---

1998) (redefining "[m]ethod and time of payments for permanent disability"). *Cf.* W. Va. Code § 23–4–1d (1990) (Repl.Vol.1994) (describing, in general terms, "[m]ethod and time of payments for permanent disability").

4. Like their predecessors, the 1995 amendments retained the additional consideration of vocational standards detailed in W. Va.Code § 21A–3–7(m) (1993) (Repl.Vol.1996) in determining the issue of a permanent and total disability. *See* W. Va.Code § 23–4–6(n)(2) (1995) (Repl.Vol.1998). Similarly, W. Va.Code § 23–4–6(m) (1995) (Repl. Vol.1998) also conclusively presumed an injured employee to be permanently and totally disabled if he/she lost certain bodily parts or the use thereof. Unlike the earlier statutes, however, the 1995 amendments created more stringent eligi-

bility requirements for an injured employee who had aggregate permanent partial disability awards of eighty-five percent or more. *See* W. Va.Code § 23–4–6(d) (1995) (Repl.Vol.1998) ("A single or aggregate permanent disability of eighty-five percent or more shall entitle the employee to a rebuttable presumption of a permanent total disability for the purpose of paragraph (2), subdivision (n) of this section: *Provided, however, That the claimant must also be at least fifty percent medically impaired upon a whole body basis.*" (emphasis added)); W. Va.Code § 23–4–6(n)(1) (1995) (Repl.Vol.1998) ("A claimant whose prior permanent partial disability awards total eighty-five percent or more shall also be examined by the board and must be found to have suffered a whole body medical impairment of fifty percent in order for his or her request to be eligible for further review.").

fits equal to seventy percent of his/her average weekly wages, the 1995 amendments reduced the amount of a PTD award to sixty-six and two-thirds percent of the injured employee's average weekly wages and restricted the period during which he/she could receive such benefits, ending the period of PTD eligibility upon the employee's receipt of federal Social Security retirement benefits.

For all awards of permanent total disability benefits that are made on or after the second day of February, one thousand nine hundred ninety-five, including those claims in which a request for an award was pending before the division or which were in litigation but not yet submitted for a decision, then benefits shall be payable until the claimant attains the age necessary to receive federal old age retirement benefits under the provisions of the Social Security Act, 42 U.S.C. 401 and 402, in effect on the effective date of this section. Such a claimant shall be paid benefits so as not to exceed a maximum benefit of sixty-six and two-thirds percent of the claimant's average weekly wage earnings, wherever earned, at the time of the date of injury not to exceed [the stated] percentage of the average weekly wage in West Virginia. . . .

W. Va.Code § 23–4–6(d) (1995) (Repl.Vol. 1998). *Cf.* W. Va.Code § 23–4–6(b, d) (1994) (Repl.Vol.1994).

As a result of these revisions to the workers' compensation law, numerous permanently and totally disabled employees filed a petition for writ of mandamus in the Circuit Court of Kanawha County requesting that the Commissioner be required to calculate and pay their PTD awards in accordance with the law in effect on the date of their respective injuries (*i.e.,* 70% of their average weekly wages) instead of pursuant to the 1995 workers' compensation statutory amendments (*i.e.,* 66⅔% of their average

weekly wages). By final order dated September 16, 1997, the circuit court granted the claimants mandamus relief and commanded the Commissioner "to calculate the petitioners' PTD benefits according to the law in effect on the date of injury . . . ." *Ferrell v. Vieuig* [sic], No. 97–MISC–2000, slip op. at 13 (Cir. Ct. of Kanawha County, W. Va. Sept. 16, 1997).[5] Objecting to the circuit court's ruling, the Commissioner filed a petition for appeal in this Court seeking our review of the propriety of the lower court's order. We rejected the Commissioner's appeal by order entered January 15, 1998, declining to review the circuit court's decision in *Ferrell.*

In response to the *Ferrell* decision, this Court's refusal of the appeal therefrom, and recent opinions of this Court interpreting the 1995 amendments to the workers' compensation statutes, the Legal Services Division—Claims Section of the West Virginia Bureau of Employment Programs announced, on March 19, 1998, a policy for determining which law it would apply to requests for PTD benefits, *i.e.,* whether the former (more liberal) or current (more stringent) standards for determining a claimant's eligibility for a PTD award and for calculating the amount of PTD benefits payable would govern such claims. The policy statement, in its entirety, provided:

Please be advised that in light of the case of *Conley v. Workers' Compensation [Division],* 199 W.Va. 196, 483 S.E.2d 542 (1997), and the Honorable Senior Judge James O. Holliday's decision in *Ferrell v. Vieweg,* 97–Misc–2000 (Circuit Court of Kanawha County, September 16, 1997), it is the present policy of the Legal Services Division—Claims Section, in entering final protestable orders in claims in which the claimant has requested a permanent total disability award or a second injury life award,[6] to apply the case law and statutes

**5.** The circuit court in *Ferrell* also rendered a declaratory judgment ruling finding that the Commissioner "may not apply the provisions of the 1993 and 1995 amendments to the Workers' Compensation Act to claimants who filed claims prior to the effective date of such amendments when to do so would affect their substantive rights to receive PTD benefits." *Ferrell v. Vieuig* [sic], No. 97–MISC–2000, slip op. at 14.

**6.** Generally, a claimant who is entitled to either a PTD award or a Second Injury Life Award (SILA) is unable to perform the duties of his/her prior occupation or of related endeavors. The difference between the two awards turns upon the party responsible for paying for the award. With respect to a PTD award, the entity employing the worker at the time he/she incurred his/her permanently and totally disabling occupa-

in existence and applicable on the date of injury or date of last exposure to all workers compensation claims with an injury or last exposure date prior to May 12, 1995, (see *State ex rel. Blankenship v. Richardson* 196 W.Va. 726, 474 S.E.2d 906 (1996)[) ].

Presently, there are approximately 2,540 claims referred to as *Ferrell* "New Law" claims with a date of injury or date of last exposure prior to May 11, 1995, which will be processed as noted above.[7]

(Footnotes added).[8]

■ Based upon the Commissioner's official policy statement that it would apply the law of the date of injury or the law of the date of last exposure [9] to PTD claims having an injury or last exposure date prior to the effective date of the 1995 workers' compensation amendments, May 12, 1995, the petitioners herein filed a petition for writ of mandamus/prohibition with this Court. The petitioners are four employers, each of which has at least one employee [10] who has been injured in the course of and as a result of his/her employment and who has filed a request for PTD benefits. All four employees denominated by the petitioners have based their PTD requests upon occupational injuries or diseases that have a date of injury or date of last exposure before the 1995 amendments became effective.[11] However, all four employees filed their requests for PTD benefits after the amendments' effective date.[12]

---

tional injury or occupational disease is responsible for paying the entire amount of the award, either individually or through its subscription to the Workers' Compensation Fund. However, when an employee is awarded a SILA award, the entity employing the worker at the time he/she incurred his/her permanently and totally disabling occupational injury or occupational disease is responsible for paying only that portion of the award attributable to such "second," or triggering, injury. *See* W. Va.Code § 23–3–1(d) (1995) (Repl.Vol.1998) (explaining second injury life awards and second injury reserve fund). For ease of reference in this opinion, both PTD and SILA awards will be collectively referred to as PTD awards.

7. It is important to note that, even though the Commissioner represents that there exist approximately 2,540 claims to which his announced policy would apply, these claimants must still satisfy the eligibility criteria for an award of PTD benefits before they will be granted such compensation. *See* W. Va.Code § 23–4–6(n) (1995) (Repl.Vol.1998); W. Va.Code § 23–4–6(n) (1994) (Repl.Vol.1994); W. Va.Code § 23–4–6(n) (1993) (Cum.Supp.1993); W. Va.Code § 23–4–6(n) (1990) (Cum.Supp.1991); W. Va.Code § 23–4–6(n) (1986) (Cum.Supp.1990); W. Va.Code § 23–4–6(n) (1978) (Repl.Vol.1985).

8. In his written response to the petitioning employers' petition for writ of prohibition before this Court, the Commissioner has reiterated his present policy as follows:

it is the present policy of the Workers' Compensation Division and Legal Services Division in entering final protestable orders in claims in which the claimant has requested a permanent total disability award or a second injury life award, to apply the case law and statutes in existence and applicable on the date of injury or date of last exposure to all workers compensation claims with an injury of last exposure date prior to May 12, 1995.

9. In the workers' compensation system, injured employees are entitled to receive benefits for occupational injuries and occupational diseases. The day on which an employee was injured is commonly referred to as the "date of injury". In occupational disease claims, *e.g.*, occupational hearing loss, occupational pneumoconiosis, and occupational silicosis, the date of injury is determined by the "date of last exposure," or the day upon which the employee was last exposed to the hazards believed to have caused the contraction of his/her occupational disease. *See* W. Va.Code § 23–4–1 (1989) (Repl.Vol.1998) (discussing "injury" and "occupational disease"); W. Va.Code § 23–4–14(a)(1) (1994) (Repl.Vol.1998) (defining "date of injury" for occupational disease); Syl. pt. 1, *Meadows v. Workmen's Compensation Comm'r*, 157 W.Va. 140, 198 S.E.2d 137 (1973) (defining "hazard" in context of disease of occupational pneumoconiosis); *Dickerson v. State Workmen's Compensation Comm'r*, 154 W.Va. 7, 10–11, 173 S.E.2d 388, 391 (1970) (clarifying meaning of "injury").

10. It is unclear from the record whether these employees are still employed by these employers or whether they have terminated such employment.

11. The employees' dates of injury upon which they base their requests for PTD benefits are May 5, 1993 (Danny J. Stover); August 16, 1991 (or June 29, 1993) (David L. Adkins); May 10, 1989 (Melanie L. McGhee); and November 3, 1981 (Gregory Edwards).

12. The dates upon which the named employees filed their requests for PTD benefits are October 9, 1996 (Danny J. Stover); October 13, 1996 (David L. Adkins); October 15, 1996 (Melanie L. McGhee); and September 22, 1997 (Gregory Ed-

In their request for extraordinary relief, the petitioners request this Court to compel the Commissioner to apply the 1995 amendments to these claimants' PTD claims, and to PTD claims of other similarly situated claimants, for purposes of determining their eligibility to apply for and to receive a PTD award and for calculating the amount of PTD benefits, if any, to which they are entitled.[13] Following a discussion of the standard applicable to cases invoking this Court's original jurisdiction via mandamus, we will address the merits of the petitioners' contentions.[14]

## II.

## STANDARD FOR WRIT OF MANDAMUS

 This case arises procedurally as a request by the petitioners to invoke this Court's original jurisdiction by way of the extraordinary remedy of mandamus. Typi-

cally, we permit the invocation of this writ "only in limited and truly exceptional circumstances." *State ex rel. School Bldg. Auth. v. Marockie*, 198 W.Va. 424, 432, 481 S.E.2d 730, 738 (1996) (citations omitted). *Accord State ex rel. Charleston Bldg. Comm'n v. Dial*, 198 W.Va. 185, 191, 479 S.E.2d 695, 701 (1996). The test to determine whether relief by way of a writ of mandamus is proper in a particular case is three-fold:

"'A writ of mandamus will not issue unless three elements coexist—(1) a clear legal right in the petitioner to the relief sought; (2) a legal duty on the part of respondent to do the thing which the petitioner seeks to compel; and (3) the absence of another adequate remedy.' Syllabus Point 1, *State ex rel. Billy Ray C. v. Skaff*, 190 W.Va. 504, 438 S.E.2d 847 (1993); Syllabus Point 2, *State ex rel. Kucera v. City of Wheeling*, 153 W.Va. 538, 170

wards). From the sparse record submitted in this case, it appears that only one of these employees, Danny L. Stover, has been awarded PTD benefits (PTD (SILA) awarded May 27, 1998, based upon disability onset date of February 10, 1998). It is unclear whether Mr. Stover, or any of the other employees whose requests for PTD benefits are currently pending, would be able to satisfy the new PTD eligibility requirements effectuated by the 1995 amendments to W. Va. Code § 23–4–6(n).

13. The petitioners also request this Court to issue a writ of prohibition to prevent the Commissioner from applying the declaratory judgment ruling of the Circuit Court of Kanawha County announced in *Ferrell* insofar as it instructed the Commissioner not to apply the 1993 and 1995 workers' compensation amendments where such an application would adversely affect a claimant's substantive rights to receive PTD benefits. *See supra* note 5. Despite this request for prohibition relief, the statutory problems which the petitioning employers anticipate appear to be primarily conjectural and not of immediate concern to those employees upon whom the petitioners have based their request for mandamus relief. *See, e.g.,* W. Va.Code § 23–4–6(e)(2) (*1995*) (Repl. Vol.1998) (increasing rate of payment for certain permanent partial disability awards); W. Va. Code § 23–4–16 (1995) (Repl.Vol.1998) (redefining standards for claim reopening). As we frequently have said before, this Court cannot issue an advisory opinion with respect to a hypothetical controversy.

"Courts are not constituted for the purpose of making advisory decrees or resolving academic disputes. The pleadings and evidence must present a claim of legal right asserted by

one party and denied by the other before jurisdiction of a suit may be taken." *Mainella v. Board of Trustees of Policemen's Pension or Relief Fund of City of Fairmont*, 126 W.Va. 183, 185–86, 27 S.E.2d 486, 487–88 (1943). Syl. pt. 2, *Harshbarger v. Gainer*, 184 W.Va. 656, 403 S.E.2d 399 (1991). Moreover, the manner in which the petitioners have phrased their request for prohibition relief is more akin to an indirect attack of the circuit court's decision in *Ferrell* rather than the presentation of a case in which prohibitory relief is warranted. As we noted above, this Court denied the Commissioner's appeal from the circuit court's decision in *Ferrell*, thus finalizing the litigation in that matter. In addition, we have, on more than one occasion, declined to extend relief through the extraordinary remedy of prohibition when the request therefor has the guise of a collateral attack on the lower tribunal's order. *See, e.g., State ex rel. Linger v. County Court of Upshur County*, 150 W.Va. 207, 144 S.E.2d 689 (1965); *Nelson Transfer & Storage Co. v. Jarrett*, 110 W.Va. 97, 157 S.E. 46 (1931). Thus, we conclude that we cannot entertain the petitioners' request for a writ of prohibition.

14. It should be noted that two of the employees named by the petitioning employers, Danny J. Stover and Melanie L. McGhee, have been granted leave to intervene in this proceeding as respondents thereto. Nevertheless, our subsequent references to "the respondents" will refer solely to "the Commissioner," except where otherwise noted, as the proceeding in mandamus has technically been brought against the Commissioner since it is his action the petitioning employers seek to compel.

S.E.2d 367 (1969)." Syllabus point 2, *Staten v. Dean*, 195 W.Va. 57, 464 S.E.2d 576 (1995).

Syl. pt. 2, *Ewing v. Board of Educ. of Summers County*, 202 W. Va. 228, 503 S.E.2d 541 (1998). Thus, we must ascertain whether the petitioners have satisfactorily fulfilled these criteria and demonstrated their entitlement to mandamus relief.

First, the petitioners must have a "clear legal right" to the relief which they seek. Here, the inquiry is whether the petitioners have a clear legal right to require the Commissioner to apply the 1995 amendments to the workers' compensation statutes to those PTD claims involving a date of injury or a date of last exposure prior to May 12, 1995. Based upon our examination of whether the respondent Commissioner has a legal duty to apply these statutory provisions to the controverted PTD claims, addressed below, and our evaluation of the propriety of the Commissioner's current application of those amendments, discussed in Section III, *infra*, we find that the petitioners have no right to the requested relief.

Next, the standard for issuing a writ of mandamus requires us to discern whether the respondent Commissioner has a "legal duty" to do that which the petitioning employers seek to compel. That is, does the Commissioner have a legal duty to interpret the 1995 workers' compensation amendments in such a manner as to render them applicable to claims for PTD benefits that list a date of injury or last exposure before the amendments became effective on May 12, 1995, but that were not filed until after the amendments' effective date. "[T]he Workmen's Compensation Commissioner ... is an administrative officer, agency or tribunal of the government of this State." *State ex rel. Island Creek Coal Co. v. Hanley*, 149 W.Va. 107, 111, 138 S.E.2d 848, 850 (1964) (citations omitted). In defining the duties and responsibilities of the Commissioner, the Legislature has statutorily entrusted him/her with

the sole responsibility for the administration of this chapter except for such matters as are entrusted to the compensation programs performance council.... In the administration of this chapter, the commissioner shall exercise all the powers and duties described in this chapter and in article two [§ 21A-2-1 et seq.], chapter twenty-one-a of this code.

W. Va.Code § 23-1-1(a) (1997) (Repl.Vol. 1998). Included within this grant of legislative authority is the power "to promulgate rules and regulations to implement the provisions of this chapter." W. Va.Code § 23-1-1(b). *See also* W. Va.Code § 21A-2-6 (1, 2, 14) (1996) (Supp.1998) (vesting the Commissioner with the authority to "[e]xercise general supervision of and make rules for the government of the bureau"; authorizing the Commissioner to "[p]rescribe uniform rules pertaining to investigations, departmental hearings, and promulgate rules"; and allowing the Commissioner to "[e]xercise any other power necessary to standardize administration, expedite bureau business, assure the establishment of fair rules and promote the efficiency of the service").

■ An integral part of "implement[ing] the provisions of th[e]" workers' compensation chapter of the West Virginia Code is the necessarily implied power to interpret the various statutes comprising this body of law. Although this authority of statutory construction is not expressly stated in the recitation of the Commissioner's permissible actions, this Court previously has recognized that the Commissioner's authority also incorporates those powers that are essential to permit his/her conduct of those duties that are specifically enumerated. "The State Workmen's Compensation Commissioner may exercise not only the powers expressly granted the office by statute, but also such additional powers of a procedural or administrative nature as are reasonably implied as a necessary incident to the expressed powers of the office." Syl. pt. 7, *Smith v. State Workmen's Compensation Comm'r*, 159 W.Va. 108, 219 S.E.2d 361 (1975). *See also* Syl. pt. 1, *Colvin v. State Workmen's Compensation Comm'r*, 154 W.Va. 280, 175 S.E.2d 186 (1970) (same).

■ When a governmental official or administrative agency has exerted its authority by interpreting an unclear statutory provision that it has the duty to implement and execute, this Court historically has extended

great deference to such an interpretation, insofar as it comports with accepted notions of legislative intent and statutory construction.

"Where a statute is of doubtful meaning, the contemporaneous construction placed thereon by the officers of government charged with its execution is entitled to great weight, and will not be disregarded or overthrown unless it is clear that such construction is erroneous." *Syllabus* point 7., *Evans v. Hutchinson,* [158] W.Va. [359], 214 S.E.2d 453 (1975).

Syl. pt. 8, *Smith,* 159 W.Va. 108, 219 S.E.2d 361. *See also* Syl. pt. 3, *Shawnee Bank, Inc. v. Paige,* 200 W.Va. 20, 488 S.E.2d 20 (1997) ("'Interpretations of statutes by bodies charged with their administration are given great weight unless clearly erroneous.' Syllabus point 4, *Security National Bank & Trust Co. v. First W.Va. Bancorp, Inc.,* 166 W.Va. 775, 277 S.E.2d 613 (1981)."); Syl. pt. 6, *Daniel v. Simms,* 49 W.Va. 554, 39 S.E. 690 (1901) ("The construction, given to a statute by those charged with the duty of executing it, ought not to be overruled without cogent reasons."). *But see* Syl. pt. 5, *Hodge v. Ginsberg,* 172 W.Va. 17, 303 S.E.2d 245 (1983) ("While the interpretation of a statute by the agency charged with its administration should ordinarily be afforded deference, when that interpretation is unduly restrictive and in conflict with the legislative intent, the agency's interpretation is inapplicable.").

■ From this discussion it is apparent that this Court frequently has recognized the Commissioner's responsibility to administer the workers' compensation law of this State and often has deferred to the decisions of governmental bodies interpreting ambiguous statutes that they are charged with administering. Based upon these long-standing traditions, we hold that interpretations as to the meaning and application of workers' compensation statutes rendered by the Workers' Compensation Commissioner, as the governmental official charged with the administration and enforcement of the workers' compensation statutory law of this State, pursuant to W. Va.Code § 23–1–1 (1997) (Repl.Vol.1998), should be accorded deference if such interpretations are consistent with the legislation's plain meaning and ordinary construction. For the reasons detailed in Section III of this decision, below, we conclude that the Commissioner's interpretation and application of the 1995 amendments to PTD claims filed after the amendments' effective date but involving dates of injury or last exposure preceding such date are permissible. Consequently, the Commissioner does not have a legal duty to interpret and apply the 1995 workers' compensation amendments in the manner propounded by the petitioners.

■ Lastly, the tripartite test for mandamus relief requires the "absence of another adequate remedy." The petitioners complain that, while an alternative remedy exists in this case, it is not adequate. Such other remedy presumably would require the individual determination of the various PTD claims at issue in this proceeding and entail the consequent case-by-case appeal of every decision adverse to the employers petitioning herein. When faced with similar contentions, this Court has examined whether the alternative remedy is indeed an adequate means of achieving the requested relief or whether the other remedy is so ineffective in providing such relief as to be a nonviable option. "'While it is true that mandamus is not available where another specific and adequate remedy exists, if such other remedy is not equally as beneficial, convenient, and effective, mandamus will lie.' Syl. pt. 4, *Cooper v. Gwinn,* 171 W.Va. 245, 298 S.E.2d 781 (1981)." Syl. pt. 2, *Trumka v. Moore,* 180 W.Va. 284, 376 S.E.2d 178 (1988). *Accord* Syl. pt. 2, *State ex rel. Smoleski v. County Court of Hancock County,* 153 W.Va. 307, 168 S.E.2d 521 (1969). *Cf.* Syl. pt. 4, *Halstead v. Dials,* 182 W.Va. 695, 391 S.E.2d 385 (1990) ("'Mandamus will not be denied because there is another remedy, unless such other remedy is equally beneficial, convenient and effective.' Syllabus Point 2, *Stowers v. Blackburn,* 141 W.Va. 328, 90 S.E.2d 277 (1955)."); Syl. pt. 3, *United Mine Workers of Am. v. Faerber,* 179 W.Va. 65, 365 S.E.2d 345 (1986) (same).

■ In this respect, we observe that the petitioners have voiced a compelling argu-

ment. While another remedy is indeed available to the petitioners to contest the Commissioner's interpretation and application of the 1995 amendments to claims for PTD benefits, we agree with their assertion that such other remedy is woefully inadequate. The other possible course of relief in this matter is a case-by-case direct appeal of each adverse ruling of the Commissioner by the employer aggrieved by such interpretation and application of the relevant statutory amendments. Even though this remedy exists, from the standpoint of judicial economy, the alternative course is not as "equally beneficial, convenient, and effective" as mandamus relief. First, the Commissioner would be required to review each request for PTD benefits and apply the law believed to govern the claim. If the ruling is adverse to either party, appeals may then be pursued, first to the Office of Judges, then to the Workers' Compensation Appeal Board, and ultimately to this Court. Upon review by this Court, we could conceivably determine that the Commissioner has misinterpreted or erroneously applied the applicable law, thereby necessitating reversal and further litigation in that particular case, not to mention the additional 2,540 cases reported by the Commissioner to belong to this category of PTD claims.[15]

Moreover, an up front determination of the law governing requests for PTD benefits, which are based upon injuries or last exposures occurring before the amendments' effective date but which were filed after such date, would greatly expedite the resolution of these claims. By ascertaining the applicable law, numerous questions could be resolved more certainly by the Commissioner at the beginning of the PTD application process, such as which application and eligibility criteria should be employed and at what rate PTD benefits should be paid. Absent such a definition of the law by this Court, costly, lengthy, and time-consuming litigation, both before the various workers' compensation tri-

bunals and this Court, could accompany each employee's request for a PTD award. Thus, we agree with the petitioning employers that mandamus relief is not foreclosed by the mere presence of an alternative remedy as there exists no other adequate relief.

## III.

## DISCUSSION

With this case, we again are called upon to navigate a course through the nebulous world of workers' compensation law. The sole issue presented for resolution by this Court concerns which law applies to an injured employee's request for PTD benefits when he/she was injured or last exposed to an occupational hazard before the 1995 amendments became effective, on May 12, 1995, but when he/she did not file a request for PTD benefits until after the effective date of such amendments.[16] Although we previously have had occasion to examine the constitutionality and practical application of recent amendments to the workers' compensation statutes, the precise issue in the instant proceeding was not addressed in those prior cases and thus is a matter of first impression. *See, e.g.,* Syl. pt. 4, *Conley v. Workers' Compensation Div.,* 199 W.Va. 196, 483 S.E.2d 542 (1997) (holding that 1993 amendments to W. Va.Code § 23–4–1f (1993) (Repl.Vol.1998) do not apply to application for PTD benefits that was filed prior to amendments' enactment and that was pending when amendments became effective); Syl. pt. 2, *State ex rel. Boan v. Richardson,* 198 W.Va. 545, 482 S.E.2d 162 (1996) (finding 1993 amendments to W. Va.Code § 23–4–23 (1993) (Repl.Vol.1998) to be unconstitutional insofar as they reduce an injured employee's PTD benefits upon his/her receipt of federal old age Social Security benefits); Syl. pt. 3, *Hardy v. Richardson,* 198 W.Va. 11, 479 S.E.2d 310 (1996) (ruling that amendments to W. Va.Code § 23–4–22 (1993) (Repl.Vol. 1998), regarding effect of 1993 amendments

---

**15.** That is not to say, however, that all of all of these claimants would automatically be awarded PTD benefits upon their applications therefor. Rather, they must demonstrate their entitlement to such an award. *See supra* note 7.

**16.** We acknowledge the appearance of the Amici Curiae in this case and appreciate their participation. Their concerns have been considered in conjunction with the corresponding positions of the parties participating directly in this proceeding.

on procedures for reopening of workers' compensation claims, apply only after ninety days have passed from amendments' enactment); Syl. pts. 5 and 7, *State ex rel. Blankenship v. Richardson,* 196 W.Va. 726, 474 S.E.2d 906 (1996) (holding W. Va.Code § 23–4–6(n)(1) (1995) (Repl.Vol.1998) to satisfy constitutional requirement of equal protection even though eligibility criteria for PTD benefits is not uniform, but invalidating Legislature's attempt to make such amendments effective immediately upon passage).

 In order to facilitate our discernment of the law applicable to the controverted PTD claims, we find it instructive to revisit the historical foundations of the West Virginia workers' compensation system. Prior to 1913, employees injured as a result of and in the course of their employment enjoyed the right to seek recompense for their occupational injuries by prosecuting a private cause of action for damages directly against their employers. *Taylor v. State Compensation Comm'r,* 140 W.Va. 572, 580, 86 S.E.2d 114, 119 (1955). With the enactment of the West Virginia Code of 1913 came the establishment of a statutory system of workers' compensation whereby employees' private remedies were replaced with a state-administered scheme of distinct, and frequently predetermined, compensation benefits. Sec. 1, Chap. 15P, W. Va.Code, *et seq.* (Code 1913, sec. 657, *et seq.*) (Main Vol.1914); *Deller v. Naymick,* 176 W.Va. 108, 110–11, 342 S.E.2d 73, 75–76 (1985); *Mains v. J.E. Harris Co.,* 119 W.Va. 730, 732–33, 197 S.E. 10, 11 (1938). As a result of this legislative action, the source of an employee's remedies for a work-related injury changed from judicial constructions of common law tort doctrines to specifically enumerated statutory rights. Sec. 22, Chap. 15P, W. Va.Code (Code 1913, sec. 678) (Main Vol.1914). *Accord* W. Va. Code § 23–2–6 (1991) (Repl.Vol.1998); *Deller,* 176 W.Va. at 110–11, 342 S.E.2d at 75–76; *Lester v. State Workmen's Compensation Comm'r,* 161 W.Va. 299, 308–09, 242 S.E.2d 443, 448 (1978) (quoting *Rhodes v. J.B.B. Coal Co.,* 79 W.Va. 71, 81, 90 S.E. 796, 799–800 (1916)); *Mains,* 119 W.Va. at 732–33, 197 S.E. at 11. In other words, "[t]he right to workmen's compensation benefits is wholly statutory. Under the workmen's

compensation statutes of this state, a claimant has a right to receive benefits and the director of workmen's compensation is authorized to pay benefits to a claimant in no greater amount than is expressly authorized by statute." Syl. pt. 2, *Dunlap v. State Compensation Director,* 149 W.Va. 266, 140 S.E.2d 448 (1965). *Accord Boyd v. Merritt,* 177 W.Va. 472, 474, 354 S.E.2d 106, 108 (1986); *Bragg v. State Workmen's Compensation Comm'r,* 152 W.Va. 706, 710, 166 S.E.2d 162, 165 (1969).

 Given the statutory basis of workers' compensation rights and resultant remedies, the primary method of ascertaining the availability and scope of such benefits is to look to the plain meaning of the applicable statutes and to ascertain the Legislature's intent in enacting the provisions at issue. "The primary object in construing a statute is to ascertain and give effect to the intent of the Legislature." Syl. pt. 1, *Smith v. State Workmen's Compensation Comm'r,* 159 W.Va. 108, 219 S.E.2d 361 (1975). *Accord West Virginia Health Care Cost Review Auth. v. Boone Memorial Hosp.,* 196 W.Va. 326, 336, 472 S.E.2d 411, 421 (1996). Although the rights and duties arising from the establishment of the workers' compensation system in this State are primarily statutory, there nevertheless arise occasions in which this Court is called upon to interpret ambiguous, uncertain, or vague provisions contained in the workers' compensation statutes, when necessary and essential to the realization of such statutory rights. "A statute that is ambiguous must be construed before it can be applied." Syl. pt. 1, *Farley v. Buckalew,* 186 W.Va. 693, 414 S.E.2d 454 (1992). *See also McCoy v. Vankirk,* 201 W.Va. 718, 725, 500 S.E.2d 534, 541 (1997) ("[W]hen a statute's language is ambiguous, a court often must venture into extratextual territory in order to distill an appropriate construction." (internal quotations and citation omitted)). As we explained in Section II, above, when the administration and execution of a body of statutory law has been delegated to or entrusted with a specific governmental officer or agency, this Court first looks to such officer's or agency's interpretation of the controverted statute. When such an interpreta-

tion comports with the legislative intent and canons of statutory construction, we afford the officer's or agency's interpretation great deference. *See, e.g.,* Syl. pt. 3, *Shawnee Bank,* 200 W.Va. 20, 488 S.E.2d 20; Syl. pt. 8, *Smith,* 159 W.Va. 108, 219 S.E.2d 361. The facts of the case *sub judice* are no exception to this rule. Thus, we refer to the Commissioner's interpretation of the law applicable to the challenged PTD claims for guidance in our resolution of the parties' dispute.

The Commissioner has announced a policy of applying the law "applicable on the date of injury or date of last exposure [17] to all workers compensation claims [for PTD benefits] with an injury or last exposure date prior to May 12, 1995." (Footnote added). To ascertain the correctness of this statutory interpretation, we must look first to the Legislature's intent in enacting this legislation. *See, e.g.,* Syl. pt. 1, *Smith,* 159 W.Va. 108, 219 S.E.2d 361. In 1995, the West Virginia Legislature amended W. Va.Code § 23–4–6. The amendments relevant to this proceeding concern the revision of the eligibility requirements an injured employee must satisfy before he/she may apply for and receive a PTD award and the rate at which such benefits, if any are awarded, are to be paid. Contained within these amendments was the Legislature's directive that the new criteria would apply to all claimants having a date of injury or date of last exposure on or after February 2, 1995, and to all requests for and awards of PTD benefits made or pending on and after this date. W. Va.Code § 23–4–6(d, n(1)) (1995) (Repl.Vol.1998). In *Blankenship,* this Court invalidated the Legislature's attempt to make these changes effective immediately from the enactments' passage on February 10, 1995, and thus, impliedly, negated any legislative attempt to earlier apply the new workers' compensation law. Syl. pt. 7, 196 W.Va. 726, 474 S.E.2d 906 and 196 W. Va. at 738–39, 474 S.E.2d at 918–19. The net effect of *Blankenship,* then, was· to change the

effective date for the 1995 workers' compensation statutes to ninety days after their passage, or May 12, 1995. *Id.* To date, the West Virginia Legislature has not expressed any intent to alter the May 12, 1995, effective date as determined by this Court, and thus, it appears that the effective date for the 1995 workers' compensation amendments is May 12, 1995. Therefore, insofar as the Commissioner's statutory interpretation has selected May 12, 1995, as the operative date in distinguishing between employees' claims for PTD benefits, such interpretation is correct.

Our next inquiry, then, must necessarily be whether the Commissioner has correctly selected the law of the date of injury or date of last exposure as the applicable law in all PTD claims based upon an occupational injury or occupational disease incurred before May 12, 1995. A review of the applicable provisions of W. Va.Code § 23–4–6 demonstrates that the Legislature has remained silent on this point. In fact, a review of our workers' compensation jurisprudence demonstrates that the Legislature frequently has declined to provide guidance as to which law should govern a particular request for compensation benefits. Absent such legislative direction, this Court has repeatedly adopted the common law view that "[t]he statutes governing the rights and duties of the employer and claimant and the powers and responsibilities of the Commissioner are those that were in effect on the date of the injury." *Smith,* 159 W.Va. at 112, 219 S.E.2d at 363–64 (citations omitted). *Accord Gallardo v. Workers' Compensation Comm'r,* 179 W.Va. 756, 759–60 n. 5, 373 S.E.2d 177, 180–81 n. 5 (1988); *Pertee v. State Workmen's Compensation Comm'r,* 156 W.Va. 773, 776, 197 S.E.2d 318, 320 (1973); *Ball v. Workmen's Compensation Comm'r,* 156 W.Va. 419, 422, 194 S.E.2d 229, 230 (1973); *Taylor v. State Compensation Comm'r,* 140 W.Va. at 577–78, 86 S.E.2d at 117–18; *Lancaster v. State Compensation Comm'r,* 125 W.Va. 190, 192, 23 S.E.2d 601,

---

17. We presume that by the law "on the date of injury or date of last exposure" the Commissioner intended the date of the injury or last exposure which entitled the injured claimant to the PTD benefits for which he/she has applied. *See Keaton v. WCC & Rockingham Mktg. Coop. I,* 185 W.Va. 140, 141, 405 S.E.2d 640, 641 (1991)

(defining "date of the injury" as "the date of the injury that made the claimant eligible for the particular award"). A perusal of the applicable workers' compensation statutes and regulations fails to provide any further guidance in this regard.

603 (1942). *See also* 82 Am.Jur.2d *Workers' Compensation* § 32, at 47 (1992) ("Workers' compensation claims are governed, *in the absence of any contrary provision,* by the law in force at the time of the occurrence of the injury...." (emphasis added) (footnote omitted)). *But see Pnakovich v. SWCC,* 163 W.Va. 583, 589, 259 S.E.2d 127, 130 (1979) (abandoning "strict allegiance to the date of injury as a magical point" for the application of workers' compensation statutes, but acknowledging that "[t]he date of injury is in many instances the most logical date ... and ... the least arbitrary of the alternatives" when making a choice as to the law governing a particular claim).

■ With respect to awards and calculations of PTD benefits, we note that selecting the law of the date of injury or date of last exposure as the governing law is consistent with the Legislature's statement of the law applicable to the payment of PTD benefits set forth in W. Va.Code § 23–4–14(a, d) (1994) (Repl.Vol.1998). *See also* W. Va.Code § 23–4–14 (1991) (Cum.Supp.1991) (same); W. Va.Code § 23–4–14 (1990) (Spec.Supp. Nov. 1990) (same); W. Va.Code § 23–4–14 (1976) (Repl.Vol.1985) (same). In this code section, the Legislature has announced that an award of workers' compensation benefits is payable according to the law on the date of the occupational injury or occupational disease entitling the claimant to such an award. *Id. But see* W. Va.Code § 23–4–14(d) (1994) (providing that future statutory amendments that increase or decrease the amount of workers' compensation benefits payable may be applied to an award initially calculated pursuant to W. Va.Code § 23–4–14(a)); W. Va.Code § 23–4–14 (1991) (same); W. Va. Code § 23–4–14 (1990) (same); W. Va.Code § 23–4–14 (1976) (same). We frequently have held that the legislative intent of a statutory provision can be ascertained by reference to sister statutes comprising the same body of law. *See, e.g.,* Syl. pt. 2, *Beckley v. Kirk,* 193 W.Va. 258, 455 S.E.2d 817

(1995) (" ' "Statutes in pari materia, must be construed together and the legislative intention, as gathered from the whole of the enactments, must be given effect." Point 3., Syllabus, *State ex rel. Graney v. Sims,* 144 W.Va. 72 [105 S.E.2d 886 (1958) ]. Syl. pt. 1, *State ex rel. Slatton v. Boles,* 147 W.Va. 674, 130 S.E.2d 192 (1963).' .Syl. pt. 1, *Transamerica Com. Fin. v. Blueville Bank of Grafton,* 190 W.Va. 474, 438 S.E.2d 817 (1993)."); Syl. pt. 3, *Boley v. Miller,* 187 W.Va. 242, 418 S.E.2d 352 (1992) (" 'Statutes which relate to the same subject matter should be read and applied together so that the Legislature's intention can be gathered from the whole of the enactments.' Syllabus Point 3, *Smith v. State Workmen's Compensation Comm'r,* 159 W.Va. 108, 219 S.E.2d 361 (1975)."). Therefore, the legislative intent expressed in W. Va.Code § 23–4–14(a, d), basing the calculation of an award of PTD benefits on the law in effect on the date of the injury or occupational disease entitling the claimant to such an award, is instructive to our determination of the law applicable to PTD claims requested and calculated pursuant to W. Va.Code § 23–4–6(d, n(1)) (1995) (Repl.Vol.1998).

■ In keeping with our prior precedents and the Legislature's intent in companion statutes, and deferring to the Workers' Compensation Commissioner's interpretation of statutes, the administration of which he is charged, we hold that when an employee, who has been injured in the course of and as a result of his/her employment, applies for workers' compensation benefits in the form of a permanent total disability (PTD) award, the employee's application for such compensation is governed by the statutory, regulatory, and common law as it existed on the date of the employee's injury or last exposure when there is no definite expression of legislative intent defining the law by which the employee's application should be governed.[18] In rendering this decision, we wish to emphasize that we do not intend to permit injured

18. We decline to address, and therefore express no opinion regarding, the parties' arguments concerning the retroactivity of W. Va.Code § 23–4–6 (1995) (Repl.Vol.1998) or their contentions raising the dichotomy of substantive versus procedural rights. Our limited decision in this case, in deference to the Commissioner's interpretation and application of the pertinent statutory provisions, should not be construed as foreclosing further evaluation of the constitutionality of any workers' compensation amendments.

employees a limitless and unrestricted period within which they may request an award of PTD benefits. Rather, such a request must be filed during the pendency of the occupational injury or occupational disease claim to which it relates or within five years of the final order therein. *See* W. Va.Code § 23–4–16 (1995) (Repl.Vol.1998) (defining time periods for reopening); W. Va.Code § 23–4–16 (1993) (Repl.Vol.1994) (same); W. Va.Code § 23–4–16 (1983) (Repl.Vol.1985) (same); W. Va.Code § 23–4–16 (1978) (Cum.Supp.1980) (same); Syl. pt. 2, *Pugh v. Workers' Compensation Comm'r,* 188 W.Va. 414, 424 S.E.2d 759 (1992) (same).

To facilitate the practical application of our decision in this case, we further hold, consistent with our decision in *Keaton v. WCC and Rockingham Marketing Cooperative I,* 185 W.Va. 140, 141, 405 S.E.2d 640, 641 (1991),[19] that the "date of injury," as it refers to an application for workers' compensation benefits arising from an occupational injury, is the date upon which the employee sustained the occupational injury which renders him/her eligible for the compensation award for which he/she has applied. Thus, when an employee applies for an award of PTD benefits, the "date of injury" applicable to his/her application is the date of the occupational injury which allegedly rendered him/her permanently and totally disabled. Likewise, we hold that the "date of last exposure," as it refers to an application for workers' compensation benefits arising from an occupational disease, is the date upon which the employee was last exposed to the hazards of the occupational disease which renders him/her eligible for the compensation award for which he/she has applied. In other words, when an employee applies for an award of PTD benefits, the "date of last exposure" applicable to his/her application is the last date upon which he/she was exposed to the hazards of the occupational disease which allegedly rendered him/her permanently and totally disabled.

Having settled the question presented for our resolution in this proceeding, we wish to iterate that we have not arbitrarily chosen the date of injury or the date of last exposure as the applicable law governing requests for PTD benefits filed after May 12, 1995, where the date of injury or last exposure preceded that date. Neither have we undertaken the decision of this case on a whim to abrogate the statement of legislative intent as to the applicability of W. Va.Code § 23–4–6 attempted in the 1995 amendments to this section. Rather, we have arrived at the decision announced in this case in a desperate effort to make sense of confusing and convoluted workers' compensation statutes that contain little, if any, guidance as to their practical application.[20] As the inordinate volume of workers' compensation cases pending before this Court suggests,[21] many unanswered questions remain despite the myriad of statutes and regulations defining and regulating workers' compensation benefits and procedures. While this Court can undertake to resolve these controverted issues, we repeatedly have held, and we have reiterated in this decision, that workers' compensation is a statutory creature, created and refined by the Legislature. *See, e .g.,* Syl. pt. 2, *Dunlap,* 149 W.Va. 266, 140 S.E.2d 448. Thus, we could be assured of more scrupulously honoring the Legislature's intent if the body charged with the creation of such law answered the various questions that remain unresolved.[22] With this explanation of our statement reiterated and relied upon herein, we find no error in the Commissioner's decision.

---

**19.** For further treatment of this Court's decision in *Keaton,* see *supra* note 17.

**20.** Our approval of the Commissioner's interpretation of the applicability of the 1995 amendments to W. Va.Code § 23–4–6 regarding PTD claims based upon a date of injury or date of last exposure prior to May 12, 1995, should not be construed as a blanket approval of the Commissioner's interpretations of the workers' compensation statutes, the administration of which he is charged. Rather, we emphasize that, under the facts and circumstances of the instant proceeding and in light of the Commissioner's policy

**21.** As of this writing, approximately 2,511 workers' compensation cases were pending before the Supreme Court of Appeals of West Virginia.

**22.** For example, in the case *sub judice,* numerous issues arose in the course of this Court's analysis and ultimate decision, none of which have been conclusively addressed and defined in the statutory or regulatory law of workers' compensation. Of particular help in our future decision of work-

decision in this matter we hope to provide guidance to the Legislature should it determine further legislative consideration and/or revision of the workers' compensation law is appropriate at this time.

## IV.

## CONCLUSION

In conclusion, we find that the petitioners have not satisfied the criteria for the issuance of a writ of mandamus requiring the Commissioner to apply the 1995 workers' compensation amendments in the manner which they have proposed. Rather, we conclude that the Commissioner correctly discerned the practical application of these amendments, and complied with the remaining body of workers' compensation law, in issuing his policy statement. Accordingly, we rule that the law of the date of injury or date of last exposure is determinative of a claimant's application for and calculation of PTD benefits when there exists no contrary expression of legislative intent. For the foregoing reasons, we deny the writ of mandamus requested by the petitioners.

Writ denied.

MAYNARD, Justice, dissenting:

I dissent because I do not believe the majority's decision in this case is consistent with the Legislature's intent in enacting the 1995 workers' compensation amendments. I also believe that by making the date of injury the operative date for determining which law to apply to an application for a PTD award, the majority takes several steps backward in our workers' compensation jurisprudence.

As stated by the majority, the first rule of statutory construction is to follow legislative intent. The majority does not do that here. All agree that the Legislature's purpose for the enactment of the 1995 workers' compensation amendments was to address the dire financial straits of the Workers' Compensa-

tion Fund. The decision in this case is clearly at odds with that intent. According to the Commissioner's March 19, 1998 policy statement where he announced which law would apply to requests for PTD benefits, "[p]resently, there are approximately 2,540 claims referred to as *Ferrell* 'New Law' claims with a date of injury or date of last exposure prior to May 11, 1995." As a result of this decision, these claims will now be processed using the pre–1995 law which precipitated the Fund's financial crises. With today's decision, the majority has reopened the floodgates of profligacy that has plagued our workers' compensation system.

The figures are truly scary. If one PTD award is worth $400,000 to $500,000, and if all of the 2,540 PTD applicants noted above were granted PTD awards, the cost to the Workers' Compensation Fund would be over a BILLION dollars. To be exact, it would cost $1,270,000,000.00. If only half of these applicants were to receive PTD awards, it would amount to a payment of $635,000,-000.00 from the Fund. In fairness to the majority, some of these claimants will get a PTD award no matter what our decision is in this case. In fact, some of the claimants are unquestionably totally disabled and should get PTD.

Also, I find the majority's holding that employees' applications for PTD awards are governed by the law as it existed on the date of injury particularly unfortunate. The recent trend in our law has been to dispense with this outdated rule in favor of a flexible approach more responsive to legislative attempts to provide for the efficient management of the Workers' Compensation Fund. As this Court stated in *Pnakovich v. SWCC*, 163 W.Va. 583, 589, 259 S.E.2d 127, 130 (1979), "we no longer feel constrained to maintain strict allegiance to the date of injury as a magical point. The 'magic' of the date of injury pertains to contract law and thus is no longer relevant except to the extent that the equities of the case demonstrate a compelling reliance interest on the part of the employer or employee." There is no

---

ers' compensation cases would be clear expressions of legislative intent clarifying the individual terms of art employed in various statutory provi-

sions and guiding the application of the governing statutes to individual requests for PTD benefits.

compelling reliance interest in this case and, therefore, no reason to adopt the date of injury rule.

In conclusion, I fear that the majority's renewed allegiance to the date of injury in this case may prove to be a means by which this Court will circumvent future legislative attempts at statutory change and result in continuing judicial micro-management of the workers' compensation system. Accordingly, I respectfully dissent.