Mary Rasmus *v.* Workmen's Compensation Appeal Board

(No. 8305)

Submitted January 8, 1936. Decided February 4, 1936.

Hatcher, President, and Maxwell, Judge, dissenting.

*A. C. Schiffler* and *E. L. Harrison,* for appellant.

*Homer A. Holt,* Attorney General, and *Kenneth E. Hines,* Assistant Attorney General, for Workmen's Compensation Appeal Board.

*Carl G. Bachmann* and *Lester C. Hess,* for employer Herman Strauss.

KENNA, JUDGE:

On June 9, 1933, Stanley Rasmus was prostrated by heat while operating a ten-ton crane in the junk yard of Herman Strauss in the city of Wheeling. He was taken at once to a hospital where he died soon thereafter. Claim of his widow for compensation was presented to and denied by the Compensation Commissioner; an appeal was allowed to this court, pursuant to which, on January 15, 1935, the order of the Compensation Commissioner was reversed and the case was remanded "for further development relative to Stanley Rasmus' exposure, or non-exposure, by reason of his employment, to special or peculiar danger from the elements, not experienced by other persons in the community, whereby the said Stanley Rasmus suffered a heat stroke, which resulted in death." On April 26, 1935, in the city of Wheeling, further proof relative to the question for the further development of which the case was remanded, was taken.

This additional proof discloses that the crane in question was mounted upon a steel flat car running on rails; that the crane was operated by a gasoline engine housed in a steel shed with a steel roof, the back and front of which were removed at the time in question; that there was a steel seat within two and a half or three feet of the engine upon which the operator sat at times, and that a fan intended to keep the engine cool threw the engine heat from the front back toward the operator; that there was steel and other metal junk in the yard on each side of the crane piled from two feet to ten or twelve feet in depth. Based upon these physical conditions, Dr. J. R. McClung, a witness for the claimant who had testified in the former hearing, stated that in his opinion the circumstances surrounding the decedent in

the crane, and the presence of metal in large quantities and in close proximity to the place where Rasmus was working, would subject him to greater danger of heat prostration than that which would be encountered by others working under the same weather conditions in the open. Rasmus seems to have suffered the stroke from which he died at between eleven and eleven thirty in the morning. Earlier that morning, he seems to have complained of feeling ill, doubtless also due to the heat. The temperatures in the city of Wheeling on the day in question are shown at several different times of the day and range from 89 degrees at eight o'clock to 100 degrees at noon. There is testimony tending to show that it was cooler in the cab of the crane than upon the ground immediately surrounding the crane.

In this state of the case, an award of compensation was made by the Compensation Commissioner, and upon appeal to the Workmen's Compensation Appeal Board the award was reversed, and this appeal is prosecuted from the order of the board reversing the award of the commissioner.

The first question to be presented and decided is the weight that must be given by the Workmen's Compensation Appeal Board to the finding of fact by the Compensation Commissioner upon an appeal to the board from a finding of the commissioner. This question, we think, is entirely covered by the statute (chapter 78, Regular Session of 1935) creating the Workmen's Compensation Appeal Board, and more particularly by the following language quoted from section 3 of article 5 of that act. The language in question, with emphasis supplied, is as follows: "At any such hearing the board shall consider the record before it as furnished by the commissioner and upon motion of either party or upon its own motion said board may remand said cause to the commissioner for the taking of such new, additional or further evidence as in the opinion of the board may be necessary to arrive at a fair and just decision; and thereupon the board shall sustain the finding of the commissioner or *enter such order or make such award as*

*the commissioner should have made* and shall thereupon certify the same to the commissioner, who shall proceed in accordance therewith."

This language, it seems to us, clearly indicates that in its finding, the Workmen's Compensation Appeal Board is not to be circumscribed nor trammeled by the finding of the Compensation Commissioner, but that it proceeds to make such disposition of the case on appeal as in its opinion the state of the proof taken before the Compensation Commissioner demands, being free to act in the premises uninfluenced by the finding of the Compensation Commissioner. Analogy, it seems, is to Code, 53-3-3, governing review in the circuit courts upon certiorari to inferior tribunals. In *Snodgrass* v. *Board of Education,* 114 W. Va. 305, 171 S. E. 742, we held that, on certiorari under the statute in question, the circuit court became a fact finding tribunal upon the record as it was before the inferior court. It seems to us that the same result necessarily follows under a statute worded as is the statute before us. In the *Snodgrass* case, however, we held further that upon a writ of error to the judgment of a circuit court in a proceeding in certiorari, the judgment of the circuit court (the fact finding tribunal) would not be set aside in this court unless it appeared to be clearly wrong. The same situation exists, we think, when an appeal is granted from the Workmen's Compensation Appeal Board to this court.

This brings us to the question of determining whether, in the case before us, the order of the Workmen's Compensation Appeal Board (the fact finding body) is clearly wrong. We are of the opinion that it is. Perhaps, upon the technical views of evidence that must be adhered to in cases in courts of law, serious questions upon this phase of the case might exist. But here that rigidity is relaxed and more liberality is indulged in. When this case was before this court upon the former appeal, the action of the court necessarily was based upon the conclusion that nothing existed in the record as it was then made up to preclude the claimant from bringing her claim within the rule since laid down in *Collett* v. *State Com-*

*pensation Commissioner,* 116 W. Va. 213, 179 S. E. 657. On the former appeal, the case was remanded to permit both the claimant and the employer to adduce further proof as to whether Rasmus had been exposed, upon the occasion in question, by reason of his employment, to "special or peculiar danger * * * not experienced by other persons in the community." Upon the case being remanded, the only proof adduced of any material consequence was that favoring the claimant. Without recounting its nature further than has already been done, we believe that it suffices to say that this proof is sufficient to show that in no small degree the employment in which Rasmus was engaged at the time of the prostration which resulted in his death, was one in which his exposure to heat, such as would likely bring about prostration, was one to which the general public was not exposed. We think further that this proof simply bears out the commonly known operation of natural law. Certainly, it requires no over-credulity to be impressed with testimony to the effect that a man with metal beneath him, metal above his head, metal in part surrounding him and large quantities of metal piled upon the ground on two sides of him, from two to twelve feet thick, and working within three or four feet of an operating gasoline engine, capable of lifting ten tons, the whole in an open junk yard exposed to the sun, with the temperature of the general locality 89 degrees at eight o'clock in the morning and 100 degrees at noon, is in danger of heat prostration by reason of his position to a far greater degree than that to which the general public is exposed. We do not regard the proof to the effect that it was cooler in the cab of the crane than it was upon the ground surrounding the crane as being of any particular worth. The heat conditions on the ground surrounding the crane were as much a part of Rasmus' working conditions as any other of the conditions of his employment, though perhaps not affecting him as directly as those in the cab. Neither do we think that the fact that others survived heat perhaps more intense than that to which Ras-

mus was exposed is of particular weight. It is not necessary that all or more than one of the workmen subject to unusual heat exposure should be prostrated in order for the one affected to receive compensation. There is no proof in this record tending to show that the heat conditions under which Rasmus worked were the same as those to which the public at large was exposed at the time. On the contrary, we are of the opinion that all of the proof tends strongly to show that he was, at the time of his prostration, exposed to the heat by reason of his employment to a far greater degree than was the general public in the same community. His exposure and prostration was certainly a specific event.

For reasons stated, we are of the opinion to reverse the finding of the Workmen's Compensation Appeal Board and to remand the case with directions that compensation be awarded to the claimant.

*Reversed and remanded.*

HATCHER, PRESIDENT, dissenting:

The testimony that the temperature was cooler in the cab than on the ground around the crane was clear and unequivocal. The witnesses spoke from actual experience. They were not discredited, and their testimony was not specifically controverted. Therefore, I cannot regard their testimony as of no "particular worth," as the majority has done. With all deference to the majority, it seems to me that the claimant's case depends to such an extent on conjecture, that it does not have the degree of certainty requisite in order to reverse the ruling of the Appeal Board as clearly wrong. Even admitting that the claim is one upon which reasonable men may differ, then the Board should be upheld since it is essentially *a fact finding tribunal.*

Judge Maxwell authorizes me to say he joins in this dissent.