354 S.E.2d 106

**Paul W. BOYD**

v.

**Mary Martha MERRITT,
Commissioner, etc.**

No. 17061.

Supreme Court of Appeals of
West Virginia.

July 3, 1986.
Dissenting Opinion March 10, 1987.

Timothy G. Leach, Charleston, for appellant.

Atty. Gen. Charlie Brown, Asst. Atty. Gen. Robert Pollitt, Charleston, for appellee.

W. Va. Coal Ass'n by Jackson, Kelly, Holt & O'Farrell, John L. McClaugherty, Allen R. Prunty, Charleston, Arcmo, Inc. by Shaffer & Shaffer, Anthony J. Cicconi, Madison, for amicus curiae.

NEELY, Justice:

The question presented for our decision in this original mandamus action is whether the Workers' Compensation Commissioner may apply emergency rules for evaluating the results of blood gas studies to occupational pneumoconiosis claims pending at the time the rules were promulgated. For the reasons stated below, we answer in the affirmative, and decline to issue the writ.

The facts are as follows: On 14 April 1983, petitioner Paul W. Boyd filed with the commissioner an application for occupational pneumoconiosis disability benefits. On 19 March 1984, the commissioner made a nonmedical finding of fact as required by *W. Va. Code* 23–4–15b [1971], and referred the claimant to the Occupational Pneumoconiosis Board for evaluation. After examination of the claimant, the board diagnosed occupational pneumoconiosis with no pulmonary impairment. On 11 January 1985, the commissioner entered an order granting the petitioner a five percent permanent partial disability award, pursuant to *W. Va. Code* 23–4–6a [1978]. On 24 January 1985, the petitioner protested the commissioner's order.

The petitioner then underwent an examination by Dr. Donald L. Rasmussen at the Appalachian Pulmonary Laboratories in Beckley, West Virginia. The examination included testing and exercise blood gas studies. On 14 March 1985, the petitioner submitted to the commissioner the report of Dr. Rasmussen which, pursuant to the Occupational Pneumoconiosis Board tables, indicated pulmonary impairment of between fifteen and twenty percent. On 30 April 1985, the commissioner set the petitioner's claim for a protest hearing.

On 3 May 1985, the commissioner adopted a set of emergency administrative rules governing the evaluation of medical evidence submitted in occupational pneumoconiosis claims. One of these rules prescribed adjustments of the results of blood gas studies according to the altitude at which the study was conducted. [Emergency Workers' Compensation Fund, Leg. Rule, 23–1, Series I, Sec. 20.8, Arterial Blood Gas Studies (II)]. Specifically, the rule required the Pneumoconiosis Board to adjust the claimant's arterial oxygen tension value up five millimeters of mercury (mmHg) for each 1000 feet or fraction thereof that the testing laboratory was located above the average altitude of Charleston. For example, Bluefield is located approximately 2600 feet above sea level. Charleston is located approximately 600 feet above sea level. Because Bluefield is at an altitude approximately 2000 feet above Charleston, arterial oxygen tension (PO2) values obtained at Bluefield would be increased by 10 mmHg. The adjusted arterial oxygen tension value would then be applied to the Pneumoconiosis Board tables to determine the degree of the claimant's impairment. Thus, a claimant with an arterial oxygen reading of 67 in a test conducted at Bluefield would be deemed to have a reading of 77 for purposes of assessing pulmonary impairment because the tables are compiled based on normal readings in Charleston.

After the enactment of the emergency rules, a protest hearing was held. The board concluded that, although the results of Dr. Rasmussen's examination of the claimant would have demonstrated between fifteen and twenty percent impairment before the adoption of the emergency rules, the results interpreted in light of the adjustments provided for in the rules confirmed the board's initial finding of no pulmonary impairment.

The claimant then requested that the commissioner not apply the emergency rules to his claim. On 31 October 1985, the commissioner entered an order affirming her order of 11 January 1985, and further denied the claimant's motion to exclude the application of the emergency rules to petitioner's claim. On 2 December 1985, petitioner appealed the order to the Workers' Compensation Appeal Board. On 6 December 1985, before the appeal board had taken any action, the petitioner filed a petition for a writ of mandamus in this Court.

On 8 March 1986, the West Virginia Legislature modified the commissioner's emergency rules by Enrolled Senate Bill No. 434, 1986 Regular Session and adopted a legislative rule, *W.Va.Code* 64–2–23(1)(13)(b). The commissioner's emergency rule adjusting altitude was amended by the legislature to provide for an upward adjustment of 1 mmHg for each 300 feet or fraction thereof that the testing laboratory is located above the average altitude of Charleston. The legislature's approval of the emergency rules, as amended, effected an automatic expiration of the emergency rules and substituted in its place the legislative rule promulgated in Enr.S. Bill No. 434. *W.Va.Code* 29A–3–15(a)(3) [1985]. The governor subsequently signed the bill, giving the legislative rule the full force and effect of law. Therefore, we need not address petitioner's argument concerning the invalidity of the emergency rules.

■ Petitioner argues that the legislative rule adjusting arterial oxygen tension value 1 mmHg for every 300 feet of altitude that the testing laboratory is located above Charleston is scientifically inaccurate and therefore illegal. The right to workers' compensation benefits is wholly a creature of statute, "in no sense based on the common law." *Bounds v. State Workmen's Compensation Commissioner*, 153 W.Va. 670, 172 S.E.2d 379, 382 (1970). The legislature is thus free to provide or fail to provide, within constitutional limits, rights, remedies and procedures pertaining to the administration of workers' compensation claims, as well as guidelines for determining whether a particular claimant is entitled to workers' compensation benefits.

This Court does not sit as a superlegislature, commissioned to pass upon the political, social, economic or scientific merits of statutes pertaining to proper subjects of legislation. It is the duty of the legislature to consider facts, establish policy, and embody that policy in legislation. It is the duty of this court to enforce legislation unless it runs afoul of the State or Federal Constitutions. Petitioner here does not allege that the legislative rule is constitutionally infirm, nor do we perceive any constitutional obstacle to its application.[1]

■ Finally, petitioner contends that the application of the emergency rule to his claim is retroactive and, therefore, improper. Petitioner claims that, because his injury, his initial examination by the board, and his examination by Dr. Rasmussen all occurred before the enactment of the emergency rules, his claim should be evaluated with reference to the standards in effect before the effective date of the emergency

1. Petitioner further contends that the rules promulgated by the commissioner and the legislature are invalid because they do not conform to the standards adopted by the U.S. Department of Labor and the Social Security Administration. We find this contention without merit. *W.Va.Code* 23–1–13 [1923], which authorizes the commissioner to promulgate rules for the evaluation of evidence in workers' compensation claims, does not make the evidentiary rules of federal agencies binding upon the commissioner. Nor does petitioner direct us to any state or federal legislation indicating that either the commissioner or the legislature is bound by the evidentiary rules adopted by federal agencies. The standards for evaluation of blood gas studies adopted by federal agencies are therefore irrelevant to a determination of the validity of the rules adopted by the commissioner and the legislature.

rules. However, the petitioner is currently appealing his claim to the appeal board, which is an independent finder of fact. *Rasmus v. Workmen's Compensation Appeal Board*, 117 W.Va. 55, 184 S.E. 250 (1936). Under the liberality rule, it is the duty of the appeal board to apply the *legislative rule* to the final resolution of claimant's case, and to all other claims currently on appeal arising from adjudications made under the emergency rules.

It is a well established rule of law in this State that:

> A law is not retroactive merely because part of the factual situation to which it is applied occurred prior to its enactment; only when it operates upon transactions which have been completed or upon rights which have been acquired or upon obligations which have existed prior to its passage can it be considered to be retroactive in its application.

*Sizemore v. State Workmen's Compensation Commissioner*, 159 W.Va. 100, 219 S.E.2d 912 (1975), Syl. Pt. 3; *Charles v. State Workmen's Compensation Commissioner*, 161 W.Va. 285, 241 S.E.2d 816 (1978), Syl. Pt. 2. Because the petitioner's claim was in litigation on the effective date of the emergency standards, there were no transactions completed, no rights acquired, and no obligations existing, which is also why the appeal board may now apply the more liberal legislative rules.

■ But with regard to petitioner's argument that no rule, either the emergency rule or the legislative rule may be applied to his case, we would point out that when the rule first went into effect it was not yet determined how much impairment the petitioner suffered as a result of his occupational pneumoconiosis. Nor was it yet determined how much compensation, if any, the petitioner was entitled to as a result of his occupational pneumoconiosis. The emergency rules were simply a codification of rational criteria for evaluating evidence and were promulgated and applied while a determination of the rights of the petitioner and the obligations of his employer were still pending. Accordingly, the application of the rules to petitioner's claim was not retroactive within the meaning of *Sizemore* and *Charles*.

■ In *Pnakovich v. State Workers' Compensation Commission*, 163 W.Va. 583, 259 S.E.2d 127 (1979), we held that an amendment to the Workers' Compensation Act enacted after the date of an occupational pneumoconiosis claimant's last exposure could be applied to the claim if two conditions were met: (1) neither the employer nor the employee has changed his position in reliance upon existing law, and (2) the application of the statute would not defeat the reasonable expectations of the parties it affects. 163 W.Va. at 589–90, 259 S.E.2d at 130. In the present case, both of these conditions are satisfied. The petitioner here has not changed his position in reliance upon existing law; indeed, it would make no sense to argue that he has. Pre-rule law provided a table for determining pulmonary impairment on the basis of blood gas study results. The legislative rules merely provide guidelines for evaluating blood gas study readings in light of the altitude at which the studies are conducted. To propose that the petitioner has changed the degree of his pulmonary impairment based on pre-rule law is without merit.

Nor does the application of the legislative rule defeat the claimant's reasonable expectations. The effect of altitude upon arterial oxygen tension is universally acknowledged among the scientific and medical community. The pneumoconiosis board was free at any time before the enactment of the emergency rule to take evidence on the effect of altitude upon arterial oxygen tension readings and consider that evidence in assessing the degree of the claimant's pulmonary impairment. Indeed, the pneumoconiosis board might have considered the testimony of Dr. Rasmussen himself in the claim of *Lot E Tackett v. Buffalo Mining Company:*

> If you took 1,000 people and did their blood gases in Charleston, there would be 1,000 of them that would have about a 10 point increase in PO2 compared to Beckley. It's just because of the fact that your elevation of Beckley is 2,400 feet, barometric pressure is generally

around 700 and Charleston is 740 or 750 or something like that. *Id.* at p. 17. Thus the application of the rule to petitioner's claim does not defeat his reasonable expectations. The rule merely establishes a standard for the evaluation of evidence that could have been applied before the enactment of the rule.

"A writ of mandamus will not issue unless three elements coexist—(1) a clear legal right in the petitioner to the relief sought; (2) a legal duty on the part of the respondent to do the thing which the petitioner seeks to compel; and (3) the absence of another adequate remedy." Syl. Pt. 2, *State ex rel. Kucera v. City of Wheeling,* 153 W.Va. 538, 170 S.E.2d 367 (1969). Having upheld the validity of the legislative rules, as well as the validity of their application to the petitioner's claim, we find the first two elements necessary for mandamus relief absent. The Appeal Board will now apply the legislative rule to petitioner's claim.

Writ denied.

McGRAW, Chief Justice, dissenting:

The majority finds that, because a final determination of the petitioner's degree of impairment had not been made when the emergency rule went into effect, the petitioner did not have any rights which had become vested by that date and, thus, application of the new rule to his claim was not retroactive within the meaning of *Sizemore* and *Charles.*

The petitioner filed his application for disability benefits on April 14, 1983. The commissioner made her nonmedical finding of fact eleven months later, on March 19, 1984. The board's evaluation took another ten months. Thus, it was more than two years after he filed his initial application before the petitioner had the opportunity to present the results of Dr. Rasmussen's examination to the board.

Around the time the petitioner filed his initial application, this Court was considering *Meadows v. Lewis,* 172 W.Va. 457, 307 S.E.2d 625 (1983). In that decision we noted that the workers' compensation laws were "designed to compensate injured workers as speedily and expeditiously as possible in order that injured workers and those who depend upon them for support shall not be left destitute." *Id.* at 638; *see* W.Va.Code § 23–5–3a (1985 Replacement Vol.). We found that the commissioner frequently failed to act with the speed contemplated by the statute and our decision required her to take the necessary steps to comply with the statute.

Unfortunately for the petitioner in this case it took the commissioner nearly two years after our decision in *Meadows* to promulgate regulations establishing time limits for the administrative processing of occupational pneumoconiosis claims. Legislative Rules, Workers' Compensation Commissioner, Title 85 (1985). Under these regulations, the commissioner's nonmedical ruling is due within fifteen days from the receipt of the prescribed forms. *Id.* at § 2.2. The board's evaluation must then follow within sixty days. *Id.* at § 4.4C. A protest hearing must be held within thirty days from the receipt of the protest. *Id.* at § 7.2. These regulations and the time frames included in them were not the result of new requirements imposed by this Court in *Meadows.* They were required by the Workers' Compensation Act. *See* W.Va.Code § 23–1–13 (1985 Replacement Vol.). Given the two year delay faced by the petitioner, there is little doubt that he was denied his right to have his application processed expeditiously.

Under the regulations the petitioner's protest hearing would have been held some time in the late summer or early autumn of 1983. Of course, the emergency rule had not been issued at that time. Thus, Dr. Rasmussen's findings would have been evaluated according to the tables utilized by the board in 1983, which indicated a pulmonary impairment of between fifteen and twenty percent.

If the commissioner had performed her duties as required by statute, the petitioner's rights would have been vested in 1983 and he would currently be receiving the benefits due him. Instead, he is now twice the victim, once of occupational pneumoco-

niosis, and now of this Court's decision to honor technicalities over equity.