No. 12-1473 - <u>Gary E. Hammons v. West Virginia Office of the Insurance Commissioner and A & R Transport, Inc.</u>

and

No. 13-0312 - <u>Clara L. Stinnett v. West Virginia Office of the Insurance Commissioner and West Virginia Department of Corrections</u>

**FILED**

**May 20, 2015**
**RORY L. PERRY II, CLERK**
**SUPREME COURT OF APPEALS**
**OF WEST VIRGINIA**

LOUGHRY, Justice, dissenting:

Despite the fact that this Court has on numerous occasions recognized that it cannot sit as a "superlegislature" and rewrite statutes under the guise of statutory interpretation,[1] the majority has done that very thing in this case. Focusing solely on the rights afforded to injured workers, the majority has ignored the very foundation and purpose of the workers' compensation system in this case, obviously unaware of the far-reaching ramifications of its decision. Moreover, in its haste to render the time limitations set forth in West Virginia Code § 23-4-16(a)(2) (2010) meaningless, the majority has leapt to factual

---

[1]*See* Syl. Pt. 2, in part, *Huffman v. Goals Coal* Co., 223 W.Va. 724, 679 S.E.2d 323 (2009) ("This Court does not sit as a superlegislature, commissioned to pass upon the political, social, economic or scientific merits of statutes pertaining to proper subjects of legislation. . . . It is the duty of this Court to enforce legislation unless it runs afoul of the State or Federal *Constitutions*."); *Subcarrier Communications v. Nield*, 218 W.Va. 292, 299 n.10, 624 S.E.2d 729, 736 n.10 (2005) (*quoting State v. Richards*, 206 W.Va. 573, 577, 526 S.E.2d 539, 543 (1999)) ("[I]t is not the province of the courts to make or supervise legislation, and a statute may not, under the guise of interpretation, be modified, revised, amended, distorted, remodeled, or rewritten." ); *Boyd v. Merritt*, 177 W.Va. 472, 474, 354 S.E.2d 106, 108 (1996) ("This Court does not sit as a superlegislature . . . . It is the duty of the legislature to consider facts, establish policy, and embody that policy in legislation.").

1

conclusions not borne out by the record in this case. Finally, in a misguided attempt to bolster its reasoning and justify its departure from *stare decisis*, the majority erroneously relies upon this Court's recent decision in *Sheena H. for Russell H. v. West Virginia Office of Ins. Comm'r,* __ W.Va. __, __ S.E.2d __ (No. 13-0875 April 10, 2015). Obsessively citing to my concurring opinion in *Sheena H.*, the majority concludes that its decision in the instant matter is "in keeping" with the result reached in that case even though the cases could not be more factually distinguishable. In fact, the majority "cherry picks" phrases from my concurrence in its ill-advised and unsuccessful attempt to illustrate the alleged consistency between these decisions. Indeed, I warned of the dangers inherent in creating an exception, no matter how limited, to the time limitations imposed upon workers' compensation claims in my concurrence in *Sheena H. Id.*, __ W.Va. at __, __ S.E.2d at __ (Loughry, J., concurring). While I am dismayed by the majority's decision to further erode those time limitations, I am hardly surprised. For these reasons, I vehemently dissent from the decision in this case.

The majority opinion is premised on the notion that the claimants could not timely request additional permanent partial disability benefits because of pending litigation involving their requests to add another compensable component, *i.e.,* diagnosis, to their claim or to obtain authorization for additional medical treatment. Had the majority actually taken the time to closely examine the records submitted in these consolidated cases, it would have

2

realized that the pending litigation in both of these matters in no way prevented the claimants from timely requesting the reopening of their claims for additional permanent partial disability benefits.

With regard to Mr. Hammons, the record shows that on January 5, 2004, he slipped and fell in the course of his employment, sustaining a large contusion on his left lower leg above his ankle. Subsequently, he filed his application for workers' compensation benefits and received a favorable compensable ruling for "contusion of lower leg" and "swelling of the limb." On June 6, 2005, he was granted a four percent permanent partial disability award and his claim was closed for permanent partial disability benefits. For purposes of West Virginia Code § 23-4-16(a)(2), this was his initial award of permanent disability. In that regard, West Virginia Code § 23-4-16(a)(2) provides:

> (a) The power and jurisdiction of the commission, successor to the commission, other private carrier or self-insured employer, whichever is applicable, over each case is continuing and the commission, successor to the commission, other private carrier or self-insured employer, whichever is applicable, may, in accordance with the provisions of this section and after due notice to the employer, make modifications or changes with respect to former findings or orders that are justified. Upon and after the second day of February, one thousand nine hundred ninety-five, *the period in which a claimant may request a modification, change or reopening of a prior award that was entered either prior to or after that date shall be determined by the following subdivisions of this subsection. Any request that is made beyond that period shall be refused.*

* * * *

(2) Except as stated below, *in any claim in which an award of permanent disability was made, any request must be made within five years of the date of the initial award. During that time period, only two requests may be filed.* With regard to those occupational diseases, including occupational pneumoconiosis, which are medically recognized as progressive in nature, if any such request is granted by the commission, successor to the commission, other private carrier or self-insured employer, whichever is applicable, a new five-year period begins upon the date of the subsequent award. With the advice of the health care advisory panel, the executive director and the board of managers shall by rule designate those progressive diseases which are customarily the subject of claims. (emphasis supplied.)

Thus, pursuant to the plain language of the statute, Mr. Hammons had until June 6, 2010, to file a request for a change, modification, or reopening of his prior award.

The record shows that after receiving his initial award, Mr. Hammons developed back pain and requested that the claims administrator add "disc protrusion at L5-S1, lumbar radiculopathy and lumbar strain" as compensable components of his claim. This request was denied by the claims administrator, the Office of Judges, and the Board of Review. However, Mr. Hammons ultimately received a favorable ruling from this Court on January 4, 2010[2]–more than six months **before** the expiration of his five-year time limitation to request a modification, change, or reopening of his prior award. Yet, for reasons not set

---

[2]*Hammons v. West Virginia Office Ins. Comm'n*, No. 34907 (W.Va. Jan. 4, 2010) (unpublished).

4

forth in the record, Mr. Hammons did not seek additional permanent partial disability benefits until August 9, 2010, which was more than two months after his applicable time limitation pursuant to West Virginia Code § 23-4-16(a)(2) had expired. Given these facts, the majority's conclusion that pending litigation precluded Mr. Hammons from seeking additional permanent partial disability benefits is clearly wrong. Nonetheless, the majority finds that the Board of Review erred by denying his request for consideration of additional permanent partial disability benefits.

The majority bases it decision on the fact that Mr. Hammons was awarded an additional period of temporary total disability benefits by this Court when we reversed the Board of Review's October 15, 2007, decision and held his back injury compensable.[3] The majority erroneously concludes that the claims administrator was required to refer the claimant for a permanent partial disability evaluation for his back condition pursuant to West Virginia Code § 23-4-7a(f) (2010), which places a mandatory duty upon the claims administrator to refer claimants for a permanent partial disability evaluation when "temporary total disability benefits continue longer than one hundred twenty days." *Id.* However, West Virginia Code § 23-4-7a(f) states that the referral must be made "in accordance with the provisions of subsection (d) of this section." *Id.* West Virginia Code § 23-4-7a(d) provides that when the claims administrator "concludes that an independent medical evaluation is

---

[3]*See* note 2, *supra*.

5

indicated, or that a claimant may be ready for disability evaluation *in accordance with other provisions of this chapter*, [the claims administrator] shall refer the claimant to a physician or physicians of its selection for examination and evaluation." *Id.* In this instance, such a referral could not be made because *other provisions of this chapter*, specifically West Virginia Code § 23-4-16(a)(2), preclude a further award of permanent partial disability benefits after expiration of the five-year time limitation set forth therein. In other words, the critical flaw in the majority's analysis is that it fails to recognize that neither of the conditions set forth in West Virginia Code § 23-4-7a(d) can exist after the expiration of the five-year time limitation set forth in West Virginia Code § 23-4-16(a)(2).

Although the majority pays lip service to our rules of statutory construction, it proceeds to ignore all of them. In particular, the majority disregards the fundamental rule that "[s]tatutes which relate to the same subject matter should be read and applied together so that the Legislature's intention can be gathered from the whole of the enactments." Syl. Pt. 3, *Smith v. State Workmen's Compensation Comm'r*, 159 W.Va. 108, 219 S.E.2d 361 (1975). Given the language in West Virginia Code § 23-4-16, which this Court has previously found to be "clear and without ambiguity" and not subject to "rules of interpretation,"[4] the Legislature clearly never intended to permit a "modification, change or

---

[4]*Pugh v. Workers' Compensation Comm'r.* 188 W.Va. 414, 416-17, 424 S.E.2d 759, 761 (1992).

reopening of a prior award" of permanent disability beyond "five years of the date of the initial award." Consequently, the provisions of West Virginia Code § 23-4-7a cannot be triggered after that five-year period expires. This is the only construction that allows effect to be given to both West Virginia Code § 23-4-7a and West Virginia Code § 23-4-16(a)(2). In contrast, the majority's construction tortures the language of West Virginia Code § 23-4-7a in order to render the five-year time limitation expressly set forth in West Virginia Code § 23-4-16(a)(2) meaningless. While the majority purports to recognize that we are constrained to construe statutes consistently with one another and not in a manner that produces an absurd or inconsistent result,[5] it cannot resist the temptation to find a way around the five-year time limitation specified by the Legislature. Our rules of statutory construction simply do not permit us to pluck phrases from select statutes to support a position and ignore others merely because we do not agree with the result that the Legislature clearly intended.

Perhaps even more perplexing than its interpretation of West Virginia Code § 23-4-7a(f) is the majority's conclusion that this statutory provision also affords Ms. Stinnett the right to a permanent partial disability evaluation despite the fact that she was not granted additional temporary total disability benefits. The record shows that Ms. Stinnet slipped and

---

[5]*See* Syl. Pt 2, *Click v. Click*, 98 W.Va. 419, 127 S.E. 194 (1925) ("It is the duty of a court to construe a statute according to its true intent, and give to it such construction as will uphold the law and further justice. It is as well the duty of a court to disregard a construction, though apparently warranted by the literal sense of the words in a statute, when such construction would lead to injustice and absurdity.").

7

fell on August 31, 1998, while working for her employer, fracturing her right wrist and straining her back. She subsequently filed an application for worker's compensation benefits that was held compensable for "lower fracture radius/ulna." After Ms. Stinnet underwent treatment, including surgery on her wrist, the claims administrator entered an order on January 21, 2000, which granted her a twenty-two percent permanent partial disability award and closed her claim for permanent partial disability benefits. For purposes of West Virginia Code § 23-4-16(a)(2), this was Ms. Stinnet's initial award. Accordingly, her five-year time period for requesting a modification, change, or reopening of her prior award extended until January 21, 2005.

On January 14, 2005, Ms. Stinnet's claim was further ruled compensable for "sprain/strain of the lumbar region." Yet, Ms. Stinnett did not seek to reopen her claim for additional permanent partial disability benefits for her back injury at that time. Instead, she waited until July 5, 2011, more than five years after expiration of the time limitation provided by West Virginia Code § 23-4-16(a)(2), to make such a request. The pending litigation that the majority relies upon in Ms. Stinnet's case to excuse her untimely filing of her request for permanent partial disability benefits was not initiated until August 30, 2005, which was also after the expiration of the five-year time limitation provided by West Virginia Code § 23-4-16(a)(2). Clearly, this pending litigation did not prevent Ms. Stinnet from timely seeking further permanent partial disability benefits.

The pending litigation in Ms. Stinnet's case concerned her request for authorization for back surgery. Ms. Stinnet's request was denied by the claims administrator based upon its finding that her symptoms were the result of pre-existing degenerative changes rather than her compensable conditions. While this decision was upheld by the Office of Judges and the Board of Review, Ms. Stinnet ultimately received a favorable ruling from this Court on July 20, 2009, which authorized her requested surgery.[6] Thereafter, on July 5, 2011, Ms. Stinnet filed an application to reopen her claim for additional permanent partial disability benefits. Without question, Ms. Stinnet was entitled to additional medical care for her compensable injury;[7] however, her subsequent request to reopen her claim for additional permanent partial disability benefits was clearly time-barred by West Virginia Code § 23-4-16(a)(2).

Ironically, the majority overlooks the fact that Ms. Stinnett is unable to satisfy the criteria set forth in its new syllabus point for requesting a permanent partial disability referral. Pursuant to syllabus point five of the majority opinion, two of the criteria for requesting a permanent partial disability evaluation beyond the time period for reopening the initial claim contemplated by West Virginia Code § 23-4-16(a)(2) are the "timely fil[ing of] a reopening request pursuant to W.Va. Code § 23-4-16(a)(2) seeking to add an additional,

[6]*Stinnet v. West Virginia Office Ins. Comm'n*, No. 34685 (W.Va. July 29, 2009) (unpublished).

[7]*See* W.Va. Code § 23-4-16(a)(4).

9

related injury to his/her claim" and a ruling that "such additional injury is [] compensable." However, Ms. Stinnett never filed a reopening request to add an additional compensable component to her claim.[8] Rather, as the majority readily acknowledges, she merely requested authorization for additional medical treatment–surgery–which was ultimately granted by this Court in 2010.[9] Therefore, the majority's conclusion that Ms. Stinnet is entitled to a permanent partial disability evaluation referral is nonsensical because she cannot satisfy the new criteria it crafted for making such a request.

The issue in these cases–whether a claimant may seek additional permanent benefits when diagnoses are added to a claim and/or medical treatment is received after the expiration of the five-year time limitation set forth in West Virginia Code § 23-4-16(a)(2) –has come before this Court on several occasions.[10] Most recently, in *Lewis v. West Virginia*

---

[8]As noted above, Ms. Stinnet's back injury was added as a compensable component of her claim before her five-year time period under West Virginia Code § 23-4-16(a)(2) expired.

[9]*See* note 6, *supra*.

[10]*See, e.g., Kuhns v. West Virginia Office Ins. Comm'n*, No. 11-0026, 2012 WL 3104191 (W.Va. July 26, 2012) (memorandum decision) (denying September 11, 2009, request to reopen claim for additional psychiatric permanent partial disability benefits where initial award of permanent disability was made April 11, 2001); *Fisher v. West Virginia Office of Ins. Comm'n*, No. 11-0031, 2012 WL 3000665 (W.Va. July 6, 2012) (memorandum decision) (denying September 8, 2009, request to reopen claim for temporary total disability benefits where initial decision on permanent impairment was made on August 23, 2000); *Buzzard v. West Virginia Office Ins. Comm'n*, No. 101433, 2012 WL 3195758 (W.Va. March 29, 2011) (memorandum decision) (denying January 25, 2010, request to reopen for permanent partial disability which was "after the five (5) year statute of limitations expired");

10

*Office of Insurance Commission,* Nos. 11-1689 & 11-1722, 2012 WL 5834630 (W.Va. November 16, 2012) (memorandum decision), the claimant, Cynthia Lewis, appealed a decision of the Workers' Compensation Appeal Board denying her request for a permanent partial disability rating for her compensable diagnosis of "disturbance of salivary secretion." The initial injury that resulted in Ms. Lewis's workers' compensation claim occurred on November 21, 1995, and she was granted an initial permanent partial disability award of thirty-two percent on October 25, 2001. The claimant's diagnosis of disturbance of salivary secretion was not added as a compensable component of her claim until January 6, 2009. When the claimant requested a permanent partial disability rating for this component of her claim, the request was denied as being time-barred pursuant to West Virginia Code § 23-4-16(a)(2) because the time period for seeking a modification, change, or reopening of her prior award expired on October 25, 2006. Affirming the decision of the Appeal Board, this Court explained, as follows:

--------

*Puher v. West Virginia Office of Ins. Comm'n*, No. 101483, 2012 WL 3206530 (W.Va. March 26, 2012) ( memorandum decision) (denying November 3, 2008, request to reopen for permanent partial disability benefits where permanent benefits were initially granted on March 18, 1994); *Stover v. West Virginia Office of Ins. Comm'n*, No. 11-0097, 2011 WL 8199963 (W.Va. December 7, 2011) (memorandum decision) (denying February 18, 2009, request to reopen claim for permanent partial disability benefits where initial award of permanent benefits was made on April 25, 2003); *Speights v. West Virginia Office of Ins. Comm'n*, No. 101173, 2011 WL 8185559 (W.Va. November 10, 2011) (memorandum decision) (denying request to reopen claim for permanent total disability benefits where application was made beyond "the five year time limit" from date of initial permanent disability award).

In this appeal, Ms. Lewis contends that her request for a permanent partial disability rating is simply a request to be evaluated for a medical condition that was approved by prior reopening litigation. In other words, she argues that because her claim was held compensable for disturbance of salivary secretion after she was granted her 32% permanent partial disability award, she is entitled to a permanent partial disability rating for this condition.

In denying Ms. Lewis's request, the Board relied upon this Court's decision in *Fox v. West Virginia Office Insurance Comm'n*, No. 100806 (July 21, 2011). In that case, this Court affirmed a decision of the Board which found a request for a permanent partial disability evaluation time barred where the claimant was initially granted a permanent partial disability award on April 9, 2004. The condition for which the claimant sought a permanent partial disability evaluation was held compensable on April 26, 2006, after the permanent benefits were initially granted. This Court upheld the Board's decision that the claimant's May 13, 2009, request for a permanent partial disability evaluation for the added condition was time barred pursuant to W. Va. Code § 23-4-16(a)(2).

Given the above, the decision of the Board in this instance is not in clear violation of any constitutional or statutory provision, nor is it clearly the result of erroneous conclusions of law, nor it is based upon a material misstatement or mischaracterization of the evidentiary record. Therefore, the decision of the Board in Case No. 11-1689 is affirmed.

*Lewis*, 2012 WL 5834630, at *2-3 (footnote omitted).

Recognizing that its decision in the cases *sub judice* is a departure from this Court's previous ruling in *Lewis,* as well as several other factually similar cases,[11] the

---

[11]*See* note 8, *supra.*

majority explains its abrupt 180 degree shift in opinion with the following incredible statement: "Given the abbreviated factual and legal discussion set forth in this Court's memorandum decisions, we cannot say that such prior decisions have fully considered and analyzed the applicable statutory and jurisprudential law as thoroughly and thoughtfully as does our extensive discussion of the issue herein."

I am dumbfounded by the message that this statement sends to all of the litigants that come before this Court. For the majority to indicate that this Court does not give full consideration and attention to cases that are decided through memorandum decisions is absolutely appalling and inaccurate. As explained in the comment to Rule 21 of the Rules of Appellate Procedure, this Court began issuing memorandum decisions in December 2010 to "reinforce the fact that every appeal will receive a decision on the merits that sets forth the considered judgment of the Court." W.Va. R.App.P. 21 cmt. "[T]here is no question that memorandum decisions are pronouncements on the merits that fully comply with the constitutional requirements to address every point fairly arising upon the record and to state the reasons for a decision concisely in writing." *State v. McKinley,* 234 W.Va. 143, —, 764 S.E.2d 303, 311 (2014). For the majority to suggest otherwise in order to justify a radical departure from the doctrine of *stare decisis* will only reinforce the belief held by some that we do not "thoroughly and thoughtfully" decide every case that comes before us.

I would also point out that the *Lewis* decision was issued on November 16, 2012, after the case was orally argued before this Court pursuant to Rule 20 of the Rules of Appellate Procedure. At that time, this Court was comprised of all the members of the majority herein.[12] To discard the *Lewis* case as another instance where this Court did not "fully consider and analyze the applicable statutory and jurisprudential law" is preposterous.

The fact of the matter is that the applicable statutory law has not been amended since *Lewis* was decided, and there is no "evidence of changing conditions or serious judicial error in interpretation sufficient to compel deviation from the basic policy of the doctrine of stare decisis, which is to promote certainty, stability, and uniformity in the law." Syl. Pt. 2, in part, *Dailey v. Bechtel Corp*., 157 W.Va. 1023, 207 S.E.2d 169 (1974). "[A]dherence to prior decisions of this Court, and the consistency among the rulings of this Court that necessarily results therefrom, is particularly warranted when those prior decisions involve a matter of statutory construction." *Jenkins v. City of Elkins*, 230 W.Va. 335, 341, 738 S.E.2d 1, 7 (2012).

It is painfully clear that although the Legislature has expressly indicated that workers' compensation claimants may not seek to reopen their claims more than five years

---

[12]The fifth member of the Court at that time was the Honorable Thomas E. McHugh as I did not join the Court until January 1, 2013.

14

after their initial awards are granted, the majority has decided to act as a superlegislature and impose a different policy based upon nothing more than judicial whim. When the founding fathers decided that separation of powers between the legislative, executive, and judicial branches of government would be a wise approach to governing, they did not contemplate that one branch of government would simply seize the powers of another because it believes that it knows better. It should not be necessary for me to remind the majority of this most basic principle.

The majority's conclusion that denying the claimants in these cases the right to reopen their claims will produce an absurd result contrary to legislative intent to fully compensate injured workers' for their injuries is simply wrong. The Legislature has obviously recognized that workers may suffer complications for their work-related injuries throughout their lifetimes. Accordingly, the Legislature has provided that such injured workers can continue to receive medical care for their injuries after their claims are closed for permanent benefits.[13] Likewise, the Legislature has also recognized that work-related injuries may progress or become aggravated over time. To that end, West Virginia Code § 23-4-16(a) affords the claimants the right to seek a modification, change, or reopening of their prior awards. However, by allowing such a request to be made only two times within five years of the initial award, the Legislature expressly chose not to create an unlimited and

---

[13]*See* W.Va. Code § 23-4-16(a)(4).

endless right to seek increases in awards for permanent benefits. It is not our place to second guess the Legislature's reasons for doing so.

The majority maintains that denying these claimants further permanent partial disability benefits for compensable injuries simply because the applicable time limitation has expired is contrary to clear statutory intent to fully compensate injured workers for their work-related injuries. While I am certainly sympathetic to injured workers who might be entitled to additional benefits but for the applicable time limitation, again, it is not this Court's place to cast aside clear and unambiguous statutory language that precludes the granting of further benefits absent a valid constitutional challenge. "When specific statutory language produces a result argued to be unforeseen by the Legislature, the remedy lies with the Legislature, whose action produced it, and not with the courts. The question of dealing with the situation in a more satisfactory or desirable manner is a matter of policy which calls for legislative, not judicial, action." *Worley v. Beckley Mech., Inc.*, 220 W.Va. 633, 643, 648 S.E.2d 620, 630 (2007) (Benjamin, J., dissenting) (internal quotations and citations omitted).

It is unfortunate that the majority has used the recent decision in *Sheena H.* to justify its creation of an exception to the time limitations set forth in West Virginia Code § 23-4-16(a)(2). Expressly "recogniz[ing] that the language of the Workers' Compensation Act evidences an intent to limit a claimant's ability to file for benefits, protest, object, or

16

appeal, subject to strict time limitations," the holding of *Shenna H.* was limited to dependent's benefits where the State Medical Examiner failed to make an autopsy report available to the decedent's family before the six-month time limitation for filing a claim for benefits expired and where there was no other evidence that the death was work-related. *Id.,* _ W.Va. at _, n.4, _ S.E.2d at _ n.4, slip op. at 11, n.4. As I explained in my concurrence, because of the unique situation in *Sheena H.*, it was obvious that the Legislature had never contemplated such a factual scenario involving the failure of a governmental entity to timely act when it statutorily imposed a six-month time limitation for the filing of a workers' compensation dependent's benefits claim. *Id.,* _ W.Va. at _, n.4, _ S.E.2d at _ n.4, slip op. at 11, n.4 (Loughry, J., concurring). The same cannot be said in the case at bar.

While the majority wants to equate the claimants' situations in these cases with that of the claimant in *Sheena H.*, there is simply no comparison. The claimants in these cases have already been afforded significant workers' compensation benefits; conversely, the claimant in *Sheena H.* could not even obtain a favorable compensability ruling because of the inaction of a state official–an unusual and unique circumstance that was clearly beyond the claimant's control. I firmly stand behind the decision in *Sheena H.* as I believe that it was the only fair result given the abject failure of the State Medical Examiner to timely provide an autopsy report to the decedent's family. Unfortunately, rather than recognizing the uniquely limited circumstances of *Sheena H.*, the majority's treatment of the circumscribed

17

holding therein creates a slippery slope. Indeed, not unlike the inauspicious lemming, the majority's decision in this case is a leap from the precipice.

Accordingly, for the reasons set forth above, I respectfully dissent from the majority's decision in this case.